UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

ERIC ADAMS 2025, ERIC ADAMS, SHARON
ADAMS, as Treasurer of Eric Adams 2025,
MARIETTA ROZENTAL, and MALCOLM
ADAMS

                             Plaintiffs,

               -against-

NEW YORK CITY CAMPAIGN FINANCE
BOARD,

                         Defendant.
_____

**MEMORANDUM & ORDER**

25-CV-4558 (NGG) (LKE)

NICHOLAS G. GARAUFIS, United States District Judge.

This is the second time that Plaintiffs Eric Adams, the Mayor of New York City ("Mayor Adams"); Eric Adams 2025, Mayor Adams' 2025 re-election campaign for New York City Mayor (the "2025 Campaign," and together with non-plaintiff, Mayor Adams' 2021 campaign for New York City Mayor [the "2021 Campaign"], the "Adams Campaigns"); Sharon Adams, as Treasurer of the 2025 Campaign; and certain individual supporters of and donors to the 2025 Campaign (collectively, "Plaintiffs") challenge the decision of Defendant New York City Campaign Finance Board (the "CFB") to deny the 2025 Campaign public matching funds under New York City's voluntary Campaign Finance Program (the "Program"). The Program matches small-dollar contributions from individual New York City residents with public funds to help amplify their voices and to reduce the possibility and perception of corruption from large contributions in city elections.[1] The CFB, an independent, non-

_____

[1] *See* N.Y.C. Campaign Fin. Bd., *About the CFB*, available at https://www.nyccfb.info/about [https://perma.cc/N6VV-7AEB] (last visited Sept. 30, 2025).

partisan city agency, administers the Program pursuant to the New York City Charter (the "Charter"), the New York City Campaign Finance Act (the "CFA"), N.Y.C. Admin. Code. §§ 3-701, *et seq.*, and the CFB's rules (the "CFB Rules"). Through rigorous oversight and enforcement, the CFB determines the eligibility of participating candidates for Program matching funds, thereby holding candidates who use public funds to account.[2]

Hoping "to compel" the CFB to grant the 2025 Campaign the public funds to which they believe it is entitled, Plaintiffs claim that by determining that the 2025 Campaign is ineligible to receive Program matching funds, the CFB acted arbitrarily and capriciously in violation of Article 78 of the New York Civil Practice Law and Rules (the "CPLR"), and abridged their rights under the First and Fourteenth Amendments to the United States Constitution in violation of 28 U.S.C. § 1983.[3] Before this court are the parties' opposing motions for summary judgment on all claims.[4]

For the reasons explained below, the court DENIES Plaintiffs' motion for summary judgment and GRANTS the CFB's motion for summary judgment on all claims. The court further DISMISSES Plaintiffs' claim for declaratory judgment and DISMISSES Plaintiffs' requests for money damages, attorneys' fees, and litigation expenses.

---

[2] *See id.*

[3] (*See* Complaint Dated 8/15/2025 ("Compl.") (Dkt.1); Pls.' Suppl. Mem. in Supp. of Pls.' Mot. for Summ. J. Dated 9/12/2025 ("Pls.' Suppl. Mot.") (Dkt. 17) at 1.)

[4] (Pls.' Mem. in Supp. of their Mot. for Summ. J. Dated 9/4/2025 ("Pls.' Mot.") (Dkt. 15-1); Pls.' Suppl. Mot.; CFB's Opp'n to Pls.' Mot. & Cross-Mot. for Summ. J. Dated 9/16/2025 ("CFB's Mot.") (Dkt. 18-1); Pls.' Reply in Supp. of Pls.' Mot. & in Opp'n to CFB's Mot. Dated 9/18/2025 ("Pls.' Reply") (Dkt. 19).)

## I. BACKGROUND

The court assumes familiarity with the background facts and procedural history as summarized in its July 11, 2025 Memorandum and Order in the first and related action between the parties, *Eric Adams 2025 v. N.Y.C. Campaign Fin. Bd.*, No. 25-CV-3380 (NGG) (LKE), ___ F. Supp. 3d ___, 2025 WL 1920885 (E.D.N.Y. July 11, 2025) ("*Adams I*"). Accordingly, the court briefly recites the relevant facts and conclusions of law in *Adams I*. It then summarizes the pertinent facts and procedural background leading up to the present action and the parties' opposing motions for summary judgment.

### A. Factual Background

#### 1. *Adams I*[5]

*Adams I* arose from the CFB's determination that the 2025 Campaign was ineligible for Program matching funds on April 15, 2025 (the "April 15 Determination"). *Id.* at *10. The CFB provided three independent grounds for that determination: (1) Mayor Adams' failure to file his annual disclosure report with the New York City Conflicts of Interest Board (the "COIB disclosure") in violation of N.Y.C. Admin. Code §§ 12-110 and 3-703(1)(m); (2) the Adams Campaigns' failure to respond to the CFB's requests for information and documents in violation of N.Y.C. Admin. Code § 3-703(1)(d) and CFB Rule 3-01(d)(i)(A)(2); and (3) the CFB's "reason to believe that, in the course of Program participation, the candidate has engaged in conduct detrimental to the Program that is in violation of any other applicable law" under CFB Rule 3-01(d)(ii)(B). *Id.* at *6, *11, *13, *14.

On September 26, 2024, federal prosecutors in the Southern District of New York (the "Government") unsealed a five-count

---

[5] The following facts are drawn from *Adams I*.

indictment against Mayor Adams (the "*Adams* Indictment").[6] *Id.* at *3. The indictment charged Mayor Adams with wire fraud, bribery, campaign finance violations, and conspiracy to commit the aforementioned crimes. *Id.* Among other things, the indictment alleged that Mayor Adams was part of a scheme to use straw donors to hide illegal campaign contributions and to wrongfully obtain Program matching funds. *Id.* Based on these allegations, and pursuant to the CFB's broad powers to "investigate all matters relating to the performance of its functions," N.Y.C. Admin. Code § 3-708(5), the CFB sent a letter to counsel for the Adams Campaigns ("Campaign Counsel") on November 15, 2024 (the "November 15 Document Request"). *Id.* at *4.

The November 15 Document Request requested documents relating to five fundraisers referenced in the *Adams* Indictment in order to verify the Adams Campaigns' fundraising activities and to better inform the CFB's eligibility determination in the 2025 election cycle with regard to Mayor Adams (as the "participating candidate") and the 2025 Campaign (as the participating "principal committee").[7] *Id.* at *4, *13. The Adams Campaigns did not provide the requested documents by the deadline for the first Program payment date, and the CFB issued its first ineligibility determination with regard to the 2025 Campaign. *See id.* at *3-5.

Between December 16, 2024 and April 15, 2025, the CFB concluded that the 2025 Campaign was ineligible for Program matching funds in five consecutive determinations.[8] *Id.* at *10.

---

[6] (Indictment, *United States v. Adams,* No. 24-CR-556 (DEH) (S.D.N.Y. Sept. 26, 2024) ("*Adams* Indictment") (Dkt. 11-2) at ECF pp.286-340.)

[7] *See* N.Y.C. Admin. Code § 3-702(1) (defining "participating candidate"), (2) (defining "principal committee").

[8] The CFB determined that the 2025 Campaign was ineligible for Program matching funds on December 16, 2024, January 15, 2025, February 18,

On April 2, 2025 (prior to the April 15 Determination), Judge Dale E. Ho of the United States District Court for the Southern District of New York dismissed the *Adams* Indictment with prejudice.[9] *See id.* at *4.

On May 27, 2025, after exhausting its administrative remedies as to the (then-operative) April 15 Determination, the 2025 Campaign, together with other plaintiffs, commenced *Adams I*.[10] *Id.* at *7. They alleged that by making the April 15 Determination, the CFB violated various state laws, and the New York State and federal constitutions.[11] *Id.* at *1.

On July 11, 2025, this court: (1) denied the plaintiffs' petition for relief pursuant to CPLR Article 78; (2) granted the CFB's motion for judgment on the pleadings; and (3) dismissed the plaintiffs' claim for declaratory judgment and their requests for money damages, attorneys' fees, and litigation expenses because it found that the CFB had "two independent valid grounds" for denying the 2025 Campaign Program matching funds. *Id.* at *10, *27.[12]

---

2025, March 17, 2025, and April 15, 2025. (*See* Pls.' R. 56.1 Statement ("Pls.' 56.1") (Dkt. 15-2) ¶ 15; Decl. of Paul S. Ryan Dated 8/28/2025 ("First Ryan Decl.") (Dkt. 11-1) ¶¶ 27-29, 33-37, 39-42, 45-48, 55-58, 86-89, 102-07, 113.) Ryan is the Executive Director of the CFB. (First Ryan Decl. ¶ 1.)

[9] *United States v. Adams*, 777 F. Supp. 3d 185, 191 (S.D.N.Y. 2025) (dismissing the case with prejudice).

[10] On April 25, 2025, the 2025 Campaign filed a CFB Rule 7-09 petition for reconsideration of the April 15 Determination. *Adams I*, at *6. The CFB denied the petition and on May 13, 2025, provided the Adams Campaigns notice of the final ineligibility determination. *Id.*

[11] The *Adams I* plaintiffs initially filed the civil action in state court on May 27, 2025. *Id.* On June 16, 2025, the CFB properly removed the case to this court. *Id.* at *8.

[12] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

The court concluded that the CFB "properly denied the matching funds to the [2025] Campaign" because: (1) "Mayor Adams failed to file his COIB disclosure form on time to comply with [N.Y.C.] Admin. Code § 3-703(1)(m), as well as [N.Y.C.] Admin. Code § 12-110 and CFB Rules 3-01(d)(ii)(A)(4) and 3-05(b)"; and (2) the 2025 "Campaign plainly did not comply with [N.Y.C.] Admin. Code § 3-703(1)(d) and CFB Rule 3-01(d)(i)(A)(2), which instruct that a candidate seeking matching funds must provide documents and records to the CFB before the deadline set forth by the CFB." *Id.* at *13. The court concluded that the CFB was entitled to judgment on the pleadings because either reason provided a sufficient and proper basis to uphold the April 15 Determination. *See id.* at *11, *13.

Although *Adams I* was decided on these two, independent grounds, the court opted to address the constitutional issues raised by the CFB's so-called "reason to believe" standard in CFB Rule 3-01(d)(ii)(B). *Id.* at *14 (highlighting timing considerations—namely, "the next payment date of July 15, 2025, and the upcoming mayoral election on November 4, 2025"). As relevant here, the court found that the plaintiffs had plausibly alleged that the CFB's "reason to believe" standard as applied to the 2025 Campaign, violated both the First and Fourteenth Amendments. *Id.* at *14, *21.

The court found that although the CFB had identified a sufficiently important government interest—"eliminating corruption or the appearance thereof"—the CFB had not demonstrated that the April 15 Determination was "closely drawn" as applied to the 2025 Campaign. *Id.* at *15, *16. Accordingly, the court concluded that the plaintiffs had adequately alleged a First Amendment claim because the CFB: (1) "did not engage in any independent fact-finding"; and (2) relied solely on the dismissed *Adams* Indictment for its "reason to believe." *Id.* at *16, *17. Significantly, the court distinguished the facts in *Adams I* from the

6

facts of *Liu v. N.Y.C. Campaign Fin. Bd.*, No. 14-CV-1687 (RJS), 2015 WL 1514904 (S.D.N.Y. Mar. 31, 2015), where the CFB's "reason to believe" determination rested on the convictions of and trial evidence against agents of the subject campaign and the CFB's own independent investigation. *See Adams I*, at *17-18.

The court also concluded that the plaintiffs had adequately alleged an as-applied Fourteenth Amendment Due Process claim under the "void-for-vagueness" doctrine. *Id.* at *23. The court found that the plaintiffs had satisfied their burden under the doctrine's two-prong test for constitutional "notice" because: (1) they "have a liberty interest in their right to free speech, namely, political expression and political association, under the First Amendment"; and (2) they could not "have reasonably been on notice of this outcome [(the CFB's adverse April 15 Determination)] *after* the criminal charges against Mayor Adams were dismissed." *Id.* at *22 (emphasis in original).

### 2. *Adams II*[13]

Since the court's decision in *Adams I*, the 2025 Campaign's eligibility has come up for review on July 15, 2025, August 6, 2025,

---

[13] The following facts are drawn from the parties' respective Local Civil Rule 56.1 statements and the true and accurate copies of the documents relied on in and attached to those statements and the parties' briefing. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."). Unless otherwise noted, these facts are not in dispute. To the extent an assertion or denial of fact is not supported by admissible evidence, the court disregards that assertion or denial. *See* Joint Local Rules, S.D.N.Y. & E.D.N.Y. Loc. Civ. R. 56.1(d) ("Each statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, must be followed by citation to evidence that would be admissible."); *Holtz v.*

and August 28, 2025.[14] The next opportunity for the 2025 Campaign to demonstrate its eligibility for Program matching funds is October 9, 2025.[15]

Under the Program, there are 13 payment dates for the 2025 election cycle.[16] The CFB reassesses each participant's eligibility on each payment date.[17] Between each date, participants may submit COIB disclosure statements, update documentation, and correct any errors that may lead to an ineligibility determination.[18]

However, as of June 16, 2025, the Adams Campaigns had not produced documents responsive to the CFB's two prior requests for documents verifying campaign activity.[19] Accordingly, on that day, the CFB directed the Adams Campaigns to produce those and additional documents (the "June 16 Document Request") and to provide information with regard to their failure to produce responsive documents (the "June 16 Information Request").[20]

---

*Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]here there are no citations or where the cited materials do not support the factual assertions in the [Rule 56.1] Statements, the Court is free to disregard the assertion[s].")*, abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

[14] (*See* Pls.' 56.1 ¶¶ 24, 29-30; CFB's R. 56.1 Statement ("CFB's 56.1") (Dkt. 18-2) ¶¶ 76, 85.)

[15] (Pls.' 56.1 ¶ 16; First Ryan Decl. ¶ 114.)

[16] (Pls.' 56.1 ¶ 14.)

[17] (*Id.*; CFB's 56.1 ¶ 17.)

[18] (Pls.' 56.1 ¶ 14; First Ryan Decl. ¶ 18.)

[19] (CFB's 56.1 ¶¶ 32-33; CFB's Letter to the Adams Campaigns Requesting Docs. & Info. Dated 6/16/2025 ("June 16 Request") (Dkt. 11-3) at ECF p.58.)

[20] (*See* Pls.' 56.1 ¶ 25; CFB's 56.1 ¶¶ 52-54; June 16 Request at ECF p.58.)

First, the June 16 Document Request specifically directed the Adams Campaigns to produce responsive documents from Mayor Adams.[21] Second, based on Campaign Counsel's disclosures in response to the CFB's outstanding document requests that it had contacted individuals who "all advised Counsel that they were in possession of no records which have not been provided to the CFB by the Committees," the June 16 Information Request directed the Adams Campaigns to identify these individuals.[22]

At 9:45 P.M. on July 11, 2025—the date of the deadline to respond to the CFB's June 16 Requests—the Adams Campaigns submitted a response (the "July 11 Response").[23] The July 11 Response requested an extension of the deadline to respond to the June 16 Document Request and identified 11 "past and current employees, consultants, and agents of the Committees [contacted by Campaign Counsel] to obtain any responsive documentation."[24] The list included Mayor Adams, Sharon Adams, and Brianna Suggs, among others.[25] However, it did not include "certain agents" of the Adams Campaigns who were explicitly identified in the CFB's earlier document requests dated November 15, 2024 and April 11, 2025—including, for example,

---

[21] (CFB's 56.1 ¶ 52; June 16 Request at ECF pp.59-60.) The CFB's prior document requests were addressed to the "2021 and 2025 campaigns of Eric Adams," and not to Mayor Adams personally. (CFB's Letter to the Adams Campaigns Requesting Docs. Dated 11/15/2024 ("November 15 Request") (Dkt. 11-2) at ECF p.344; CFB's Letter to the Adams Campaigns Requesting Docs. Dated 4/11/2025 (Dkt. 11-2) at ECF p.392.)

[22] (CFB's 56.1 ¶¶ 34, 45, 53; June 16 Request at ECF p.58.)

[23] (CFB's 56.1 ¶ 58; Adams Campaigns' Response Letter to the June 16 Request Dated 7/11/2025 ("July 11 Resp.") (Dkt. 11-3) at ECF pp.77-78; CFB's Reply Letter to the Adams Campaigns' July 11 Resp. Dated 7/14/2025 ("July 14 Info. Request") (Dkt. 11-3) at ECF p.80.)

[24] (July 11 Resp. at ECF pp.77-78.)

[25] (*Id.*)

Rana Abbasova, Mohamed Bahi, Ahsan Chugtai, and Winnie Greco.[26]

On July 14, 2025, the CFB replied to the July 11 Response.[27] The CFB granted the Adams Campaigns' extension request and made three additional requests for information (the "July 14 Information Request").[28] The July 14 Information Request directed the Adams Campaigns to provide information regarding: (1) Mayor Adams' search for responsive documents; (2) the Adams Campaigns' change in position regarding the existence of responsive documents in their possession or control; and (3) a more comprehensive list of "past and current employees, consultants, and agents [contacted by Campaign Counsel] to obtain any responsive documentation."[29] As the CFB explained, this information was necessary to clarify three "inconsistencies"[30] in the Adams Campaigns' previous representations to the CFB, which "raise questions regarding the adequacy and reliability of the

---

[26] (*Id.*; CFB's 56.1 ¶ 59.)

[27] (CFB's 56.1 ¶ 61.)

[28] (*Id.*) In granting the extension request, the CFB reminded the Adams Campaigns of their obligations to retain records "related to contributions and fundraising events" under the CFA and CFB Rules and to provide "full and adequate response[s]" to the CFB's information and document requests in order to be eligible for Program matching funds. (July 14 Info. Request at ECF p.80.)

[29] (CFB's 56.1 ¶ 61; July 14 Info. Request at ECF pp.80-81.)

[30] The court acknowledges Plaintiffs' assertion that the Adams Campaigns "made no inconsistent representations." (*See* Pls.' Response to CFB's 56.1 Dated 9/18/2025 (Dkt. 19-1) at 13.) The court disregards this assertion because Plaintiffs do not support their denial of this fact with any admissible evidence. (*Id.*) *See* Loc. Civ. R. 56.1(d); *Holtz*, 258 F.3d at 73. In any event, the Adams Campaigns' response letters and prior representations to the CFB speak for themselves.

Campaigns' past responses and their current efforts to comply with [the CFB's document] requests."[31]

On July 25, 2025, the Adams Campaigns produced their first set of responsive documents and a revised list of 31 individuals contacted by Campaign Counsel (the "July 25 Response").[32] The July 25 Response represented that the revised list "is comprehensive."[33] The response also disclosed that a protective order in the dismissed criminal action against Mayor Adams (the "Protective Order") prohibited Mayor Adams from producing certain materials to the CFB without the Government's authorization.[34]

On August 1, 2025, the Adams Campaigns produced a second set of responsive documents and provided a supplemental response to the July 14 Information Request (the "August 1 Response").[35] The Adams Campaigns produced no further documents and provided no additional information to the CFB.[36] However, on August 5, the Adams Campaigns joined in the CFB's July 29, 2025 request to the Government for authorization to produce to the CFB responsive materials subject to the Protective Order.[37]

The CFB then determined that the 2025 Campaign is not eligible for Program matching funds—first, on August 6 and again on

---

[31] (CFB's 56.1 ¶ 61; July 14 Info. Request at ECF p.80.)

[32] (Pls.' 56.1 ¶ 26; CFB's 56.1 ¶ 62; Adams Campaigns' Response Letter to the July 14 Info. Request Dated 7/25/2025 ("July 25 Resp.") (Dkt. 11-3) at ECF pp.108-09, 119.)

[33] (July 25 Resp. at ECF p.109.)

[34] (Pls.' 56.1 ¶ 26; CFB's 56.1 ¶¶ 38-39, 66.)

[35] (Pls.' 56.1 ¶ 27; Adams Campaigns' Response Letter to the June 16 Document Request & July 14 Info. Request Dated 8/1/2025 ("August 1 Resp.") (Dkt. 11-4) at ECF p.15.)

[36] (*See generally* CFB's 56.1; Pls.' 56.1.)

[37] (*See* CFB's 56.1 ¶ 67; Pls.' 56.1 ¶ 35. *See generally* Protective Order, *United States v. Adams,* No. 24-CR-556 (DEH) (S.D.N.Y. Oct. 3, 2024) ("Protective Order") (Dkt. 11-3) at ECF pp.112-17.)

August 28, 2025 (respectively, the "August 6 Determination" and the "August 28 Determination"). [38] Each determination was based on: (1) the Adams Campaigns' failure to provide timely and complete responses to the CFB's requests for documents and information verifying campaign activity as required for Program eligibility under CFB Rule 3-01(d)(i)(A)(2) and N.Y.C. Admin. Code § 3-703(1)(d); and (2) the CFB's "reason to believe that the Candidate has, in the course of program participation, engaged in conduct detrimental to the Program that was in violation of law," pursuant to CFB Rule 3-01(d)(ii)(B).[39]

The 2025 Campaign did not file a CFB Rule 7-09 petition for reconsideration of either determination. [40] Instead, the 2025 Campaign, along with other plaintiffs, filed this lawsuit.[41]

### B.  Procedural Background

On August 15, 2025, Plaintiffs commenced this action challenging the then-operative August 6 Determination.[42] On August 29, the CFB answered the Complaint.[43] In light of the urgency of this matter, the case proceeded on an expedited briefing schedule.[44]

On September 4, Plaintiffs filed a motion for summary judgment on all claims. However, Plaintiffs' motion did not address the

---

[38] (Pls.' 56.1 ¶ 29; CFB's 56.1 ¶¶ 76, 85.)

[39] (Pls.' 56.1 ¶ 29; CFB's 56.1 ¶¶ 79, 88; CFB's Payment Determination Suppl. Notice Dated 8/7/2025 ("August 7 Notice") (Dkt. 1-11); CFB's Early Public Funds Payment Determination Letter Dated 8/28/2025 ("August 28 Early Determination Letter") (Dkt. 18-11) at 1; CFB's Public Funds Payment Determination Suppl. Notice Dated 8/28/2025 ("August 28 Notice") (Dkt. 18-12).)

[40] (CFB's 56.1 ¶ 96.)

[41] (*See generally* Compl.)

[42] (*Id.* at 5, 16-17.)

[43] (CFB's Answer Dated 8/29/2025 (Dkt. 11).)

[44] (*See* Text Order Dated 9/4/2025.)

now-operative August 28 Determination.[45] On September 9, the court directed the parties to address the August 28 Determination in supplemental briefing. [46] Plaintiffs submitted their supplemental briefing related to the August 28 Determination on September 12.

On September 16, the CFB filed its opposition to Plaintiffs' motion and its own motion for summary judgment on all claims. Plaintiffs filed their reply two days later. On September 19, the court directed the CFB to file, from the CFB-subpoenaed document production of Erden Arkan (the "Arkan Production"), the documents upon which it relied in making its ineligibility determinations. [47] On September 22, the CFB filed the Arkan Production under seal.[48] Also on September 22, Plaintiffs filed an unauthorized reply to the Arkan Production.[49] On September 23, the court accepted this reply and additional briefing requested by the parties.[50]

On Sunday, September 28, 2025, the *New York Times* reported that Mayor Adams would "abandon" the 2025 Campaign.[51] In a

---

[45] (*See* Text Order Dated 9/9/2025.)

[46] (*Id.*)

[47] (Text Order Dated 9/19/2025.)

[48] (CFB's Sealed Production of Arkan Docs. Dated 9/22/2025 ("Sealed Arkan Production") (Dkt. 20-1).)

[49] (Pls.' Letter to the Court Responding to the Sealed Arkan Production ("Pls.' Doc. Resp. Letter") (Dkt. 21).)

[50] (Sept. 23, 2025 Order (Dkt. 23) (granting additional briefing); *see also* CFB's Letter to the Court Requesting Permission to Respond to Pls.' Doc. Resp. Letter Dated 9/22/2025 (Dkt. 22); CFB's Letter Responding to Pls.' Doc. Request Letter Dated 9/22/2025 (Dkt. 22-1).)

[51] *See* Nicholas Fandos et al., *Eric Adams Abandons Re-election Bid for Mayor of New York City*, N.Y. Times (Sept. 28, 2025).

video posted to social media, Mayor Adams stated: "I cannot continue my re-election campaign."[52] Mayor Adams said further that "the [CFB's] decision to withhold millions of dollars has undermined my ability to raise the funds needed for a serious campaign."[53] Later that day, the court directed Plaintiffs to state whether, "in view of Mayor Adams' statement, they are withdrawing this action challenging [the CFB's] determination that the [2025 Campaign] is currently not eligible for public matching funds.[54] On September 29, Plaintiffs' counsel advised the court that they are not.[55]

## II.  LEGAL STANDARDS

Plaintiffs seek various forms of relief: (1) "annulling the CFB's denial of campaign matching funds to the Adams Campaign and directing the CFB to grant them" pursuant to CPLR Article 78; (2) "declaring that the CFB's denial of campaign matching funds to the Adams Campaign violated the free speech and due process protections as guaranteed by the U.S. Constitution" pursuant to 28 U.S.C. § 2201; and (3) "awarding the [2025] Campaign money damages[,] . . . attorneys' fees[,] and litigation expenses" pursuant to 42 U.S.C. §§ 1983, and 1988, respectively.[56] Before

---

[52] Video posted by Eric Adams (@ericadamsfornyc) at 3:46-3:49, X (Sept. 28, 2025 1:11 P.M.), https://x.com/ericadamsfornyc/status/1972348511892262962?s=46 [https://perma.cc/B8BX-S9BU] (last visited Sept. 30, 2025).

[53] *Id.* at 3:55-4:08.

[54] (Text Order Dated 9/28/2025.)

[55] (Pls.' Letter to the Court Dated 9/29/2025 (Dkt. 24) (explaining that because the 2025 Campaign incurred campaign expenditures prior to the date Mayor Adams ceased actively campaigning, the campaign is "entitled to the relief in this action today, just as it was prior to Mayor Adams' announcement" pursuant to N.Y.C. Admin. Code § 3-710(3)(c)").)

[56] (Compl. at 16-17.)

the court are the parties' respective motions for summary judgment on all claims.

## A.  Summary Judgment

Federal Rule of Civil Procedure 56 authorizes summary judgment where "'the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (quoting Fed. Rule Civ. Proc. 56(a)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc. (Liberty Lobby)*, 477 U.S. 242, 247-48 (1986)) (emphases in original). "An issue of fact is *genuine* if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Liberty Lobby*, 477 U.S. at 248) (emphasis added). "A fact is *material* if it 'might affect the outcome of the suit under the governing law.'" *Id.* at 35 (quoting *Liberty Lobby*, 477 U.S. at 248) (emphasis added). Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007).

"The movant bears the initial burden of showing that there is no genuine dispute as to a material fact." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022). When "the burden of proof at trial would fall on the nonmoving party, the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Id.* "If the moving party carries its burden, the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." *Id.* (adding that

the nonmovant must "'do more than simply show that there is some metaphysical doubt as to the material facts'" and "'a scintilla of evidence'" in support of its position) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986); and then quoting *Liberty Lobby*, 477 U.S. at 252). In sum, "[n]o genuine dispute of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Id.* at 737.

"The role of the district court on summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* at 738. On summary judgment, the court does not determine the truth and it "[does] not weigh evidence." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023). Neither does the court "ask whether the evidence unmistakably favors one side or the other"; instead, the court asks "whether a fair-minded fact-finder could return a verdict for the non-moving party on the evidence presented." *Id.*

"In determining whether there are genuine disputes of material fact, [the court is] required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023). Accordingly, a court may grant a motion for summary judgment "only if" the court "conclude[s] that on the record presented, considered in the light most favorable to the non-moving party, no reasonable fact-finder could find in its favor." *Roberts*, 68 F.4th at 88.

"The same standard[s] appl[y] where, as here, the parties filed cross-motions for summary judgment." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). The court is simply asked to "determine whether either of the parties deserves judgment as a matter of law on facts that are not in dispute." *AFS/IBEX v. AEGIS Managing Agency Ltd.*, 517 F. Supp. 3d 120, 123 (E.D.N.Y.

2021). The court must "evaluate[] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380.

### B. Article 78, Agency Determination, and Supplemental Jurisdiction

In general, "Article 78 is a special proceeding under the New York CPLR that is intended to provide a speedy correction of improper state administrative action." *DiMartile v. Hochul*, 80 F.4th 443, 446 n.1 (2d Cir. 2023). Article 78 authorizes a party to challenge a final agency determination when that "determination was made in violation of lawful procedure, was affected by an error of law[,] or was arbitrary and capricious or an abuse of discretion." CPLR § 7803(3). However, judicial review of a final agency determination is limited.

A court "may not disturb an administrative action unless it finds no rational basis for the agency's action, or that the challenged action was arbitrary and capricious." *In re Stevens v. N.Y. State Div. of Crim. Just. Servs.*, 40 N.Y.3d 505, 525 (N.Y. 2023). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts." *In re Peckham v. Calogero*, 12 N.Y.3d 424, 431 (N.Y. 2009). The court's review is further limited to the "facts and record adduced before the agency." *Matter of Kelly v. Safir*, 96 N.Y.2d 32, 39 (N.Y. 2001). An agency's decision "must be accorded great weight and judicial deference," where "the judgment of the agency involves factual evaluations in the area of the agency's expertise and is supported by the record." *Flacke v. Onondaga Landfill Sys., Inc.*, 69 N.Y.2d 355, 363

(N.Y. 1987). A court "must sustain" a determination "supported by a rational basis" even if the court "would have reached a different result than the one reached by the agency." *In re Peckham*, 12 N.Y.3d at 431.

"Supreme Court precedent suggests . . . that federal courts . . . have jurisdiction over Article 78 claims." *Residents & Fams. United to Save Our Adult Homes v. Zucker*, No. 16-CV-1683 (NGG) (RER), 2017 WL 5496277, at *12-13 (E.D.N.Y. Jan. 24, 2017). The Court's precedent suggests that Article 78 does not "deprive a federal court of jurisdiction over claims brought under that provision . . . as long as those claims would otherwise fall within the court's pendent jurisdiction." *See Carver v. Nassau Cnty. Interim Fin. Auth.*, 730 F.3d 150, 155 (2d Cir. 2013). As relevant here, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

### C. Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes a court's discretionary exercise of jurisdiction. *See* 28 U.S.C. § 2201(a). The court's discretion to exercise that jurisdiction is broad. *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 96 (2d Cir. 2023) ("We have consistently interpreted this permissive language [of 28 U.S.C. § 2201(a)] as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.").

Reaffirming the district courts' "broad discretion to decline jurisdiction under the [Declaratory Judgment Act]," the Second Circuit has enumerated six factors that a district court should consider in deciding whether to exercise jurisdiction under the Declaratory Judgment Act (the "*Admiral Ins. Co.* factors").

*Id.* at 99. However, the factors are "non-exhaustive," and "no one factor is sufficient, by itself, to mandate that a district court exercise—or decline to exercise—its jurisdiction to issue a declaratory judgment." *Id.* at 100. A district court has "broad discretion to weigh the factors." *Id.*

So long as a district court considers "a relevant factor that should . . . [be] given significant weight," and does not consider and give "significant weight" to "an irrelevant or improper factor" or "commit[] a clear error of judgment" in weighing the relevant factors, its decision with regard to exercising this discretionary jurisdiction will be upheld. *See id.*

### D.   Sections 1983 & 1988

Section 1983 creates a cause of action for the deprivation of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. However, "Section 1983 is not itself a source of substantive rights[;] [i]t merely provides a method for vindicating federal rights elsewhere conferred." *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 225 (2d Cir. 2004); *accord Kampfer v. Argotsinger,* 856 F. App'x 331, 333 (2d Cir. 2021) (summary order). Accordingly, "[t]he first step" in any Section 1983 claim "is to identify the specific constitutional right allegedly infringed." *Kampfer,* 856 F. App'x at 333. To succeed, a plaintiff must then meet the burden of proof on two essential elements. The plaintiff must show: (1) that the conduct at issue was "committed by a person acting under color of state law"; and (2) that the action "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010).

Section 1988 authorizes the court to award attorney's fees and litigation expenses to the prevailing party in a Section 1983 proceeding. 42 U.S.C. § 1988.

## III. DISCUSSION

Plaintiffs challenge the CFB's determinations that the 2025 Campaign was ineligible for Program matching funds on August 6 and August 28, 2025.[57] However, the August 28 Determination is the operative decision and the only determination ripe for review. *See Adams I*, at *10 (concluding that of the challenged determinations between December 2024 and April 2025, the April 15 Determination "is the operative decision"). For that determination, the CFB provided two reasons.[58] Each reason constitutes an independent basis for the CFB's determination of ineligibility. Plaintiffs challenge each basis.[59]

For the following reasons the court denies Plaintiffs' motion for summary judgment and grants the CFB's motion for summary judgment on all claims. The court's grant of the CFB's motions for summary judgment and denial of Plaintiffs' requests for injunctive relief and monetary damages necessarily settles the issues for which declaratory judgment is sought. Accordingly, and because consideration of the *Admiral Ins. Co.* factors supports the court's decision to decline jurisdiction under the Declaratory Judgment Act, Plaintiffs' declaratory judgment claim is also dismissed.

---

[57] (*See* Compl. ¶ 4; Pls.' Suppl. Mot. at 1.) The CFB first communicated the August 6 Determination to the Adams Campaigns in an Early Public Funds Determination Letter dated August 6, 2025. (CFB's Early Public Funds Payment Determination Letter Dated 8/6/2025 ("August 6 Early Determination Letter") (Dkt. 11-8) at ECF pp.46-48.) On August 7, 2025, the CFB provided the Adams Campaigns with its written explanation for the August 6 Determination, i.e., the August 7 Notice. (Pls.' 56.1 ¶ 30.) Plaintiffs state that this action challenges the August 7 Notice. (Pls.' Suppl. Mot. at 1.)

[58] (August 28 Early Determination Letter at 1; August 28 Notice at 1.)

[59] (*See generally* Compl.; Pls.' Mot.; Pls.' Suppl. Mot.)

### A.  Article 78

Plaintiffs bring an Article 78 claim to annul the August 28 Determination. They allege that the determination was "arbitrary and capricious" because the CFB "had no evidence" upon which to base the determination.[60]

Because the undisputed facts show that the CFB provided two, independent and valid grounds for the August 28 Determination—(1) the Adams Campaigns' failure to provide timely and complete responses to the CFB's requests for documents and information verifying campaign activity as required for Program eligibility under CFB Rule 3-01(d)(i)(A)(2) and N.Y.C. Admin. Code § 3-703(1)(d) (the "Failure to Provide Determination"); and (2) the CFB's reason to believe that Mayor Adams, his agents, and other agents of the Adams Campaigns engaged in conduct detrimental to the Program and in violation of law pursuant to CFB Rule 3-01(d)(ii)(B) (the "Reason to Believe Determination")—the court denies Plaintiffs' motion for summary judgment and request for relief pursuant to Article 78 and grants the CFB's motion for summary judgment on this claim.

### 1.  Plaintiffs Were Not Required to Exhaust Administrative Remedies

The CFB argues that the court cannot hear this case because Plaintiffs failed to exhaust their administrative remedies such that the CFB's determination is not "final and binding."[61] Plaintiffs respond that they were not required to bring a CFB Rule 7-09 petition prior to bringing this action because: (1) filing the

---

[60] (Compl. ¶¶ 67-68.).

[61] (*See* CFB's Mot. at 38-39 (first citing *Yarborough v. Franco,* 95 N.Y.2d 342, 346 (N.Y. 2000); and then citing CPLR § 7801(1)).)

petition "would have been futile"; and independently, (2) pursuing the petition would cause "irreparable injury."[62]

Article 78 authorizes an affected party to challenge an administrative determination that is "final." CPLR § 7801(1). "An administrative determination becomes 'final and binding' when the petitioner seeking review has been aggrieved by it." *Yarborough v. Franco*, 95 N.Y.2d 342, 346 (N.Y. 2000). However, the fact that a determination is "final" for the purpose of its present execution does not mean it is "final" for the purpose of judicial review. *Id.* at 346-47.

An administrative determination becomes "final and binding" for judicial review purposes only "when two requirements are met": (1) the agency's "completeness (finality) of the determination"; and (2) the petitioner's "exhaustion of administrative remedies." *Walton v. N.Y. State Dep't of Corr. Servs.*, 8 N.Y.3d 186, 194 (N.Y. 2007). To satisfy the "finality" requirement, "the agency must have reached a definitive position on the issue that inflicts actual, concrete injury." *Id.* To satisfy the "exhaustion" requirement, "the injury inflicted may not be significantly ameliorated by further administrative action or by steps available to the complaining party." *Id.* However, the exhaustion requirement is "subject to important qualifications." *Watergate II Apts. v. Buffalo Sewer Auth. (Watergate II)*, 46 N.Y.2d 52, 57 (N.Y. 1978).

As relevant here, an aggrieved party need not exhaust its administrative remedies where "resort to an administrative remedy would be futile or when its pursuit would cause irreparable injury." *Id.* Importantly, "[i]n deciding the point at which petitioner's administrative remedies are exhausted, courts must take a pragmatic approach." *Walton*, 8 N.Y.3d at 196. For example, "when it is plain that 'resort to an administrative remedy

---

[62] (Pls.' Reply at 17.)

would be futile,' an [A]rticle 78 proceeding should be held ripe" for judicial review. *Id.* (quoting *Watergate II*, 46 N.Y.2d at 57).

The court finds that both exceptions to the exhaustion requirement are present here. The CFB has determined that the 2025 Campaign is ineligible for Program matching funds on all payment dates to date.[63] In addition, the CFB also denied the 2025 Campaign's CFB Rule 7-09 petition for reconsideration of the April 15 Determination.[64] Further, the date of the New York City mayoral election is November 4, 2025.[65] As the parties have repeatedly told this court—and as the court itself has acknowledged—in this action, "[t]ime is of the essence."[66] Each day the election grows nearer, Plaintiffs' claimed injury—the inability to make use of Program matching funds—grows. *Cf. Parkway Hosp. v. Axelrod*, 578 N.Y.S.2d 219 (2d Dep't 1991) ("[T]he resulting economic strain suffered by the petitioner adequately demonstrates that this case comes within the irreparable

---

[63] Those dates are December 16, 2024, January 15, 2025, February 18, 2025, March 17, 2025, April 15, 2025, July 15, 2025, August 6, 2025, and August 28, 2025. (*See* Pls.' 56.1 ¶ 15; First Ryan Decl. ¶¶ 27-29, 33-37, 39-42, 45-48, 55-58, 86-89, 102-07, 113.)

[64] (*See* First Ryan Decl. ¶¶ 63, 74.)

[65] (Pls.' 56.1 ¶ 17.)

[66] (Pls.' Doc. Resp. Letter at 2; CFB's Letter to the Court re Briefing Schedule Dated 9/3/2025 (Dkt. 13) at 1 ("Defendant recognizes the urgency of this matter. . . ."); Text Order Dated 9/4/2025 (setting briefing schedule "[i]n light of the urgency of this matter").) In fact, the present action is before this court because on August 15, 2025, Campaign Counsel sent a letter to the undersigned by facsimile requesting that he determine that the case is related to *Adams I* and should therefore be assigned to the undersigned, stating: "Recognizing the time constraints presented by this matter, which will be further exacerbated if the matter is assigned to a Judge unfamiliar with the issues, we respectfully request that Your Honor determine and accept this case as related to [*Adams I*]." (Pls.' Letter to the Court Requesting Acceptance of the Case as Related to *Adams I* Dated 8/15/2025 at 1-2.)

injury exception to the exhaustion doctrine."). Despite Mayor Adams' decision to suspend the 2025 Campaign, his name remains on the ballot.[67] Therefore, Plaintiffs' claimed injury continues.

After eight successive denials (and one denial of a petition for reconsideration) over the course of nine months, the court is reluctant to permit the exhaustion requirement to block judicial review of Plaintiffs' alleged injuries—particularly, this late in the 2025 election cycle. To find otherwise would prejudice Plaintiffs' ability to have their day in court and their constitutional claims heard before the election. The court "must take a pragmatic approach" in deciding the point at which administrative remedies are exhausted. *Walton*, 8 N.Y.3d at 196. Because "it is plain that 'resort to an administrative remedy would be futile,'" the court finds that Plaintiffs' Article 78 claim is "final" for judicial review. *Id.* (quoting *Watergate II*, 46 N.Y.2d at 57).

### a.    The August 28 Known Documents List is Part of the Administrative Record

The court acknowledges that technically, the CFB should have attached an updated list of alleged, "responsive" documents that the CFB has determined exist but that were not produced the Adams Campaigns (the "August 28 Known Documents List") to the

---

[67] The New York City Board of Elections ("BOE") certified the ballot on September 11, 2025, locking in the candidates for the November 4 general election. *See* N.Y.C. Bd. of Elections, *Calendar for Certificates of Nomination for the November 4, 2025 General Election*, available at https://vote.nyc/important-notices/calendar-certificates-nomination-november-4-2025-general-election [https://perma.cc/88LW-LVE2] (last visited Sept. 30, 2025); Decision & Order on Mot., *Walden v. N.Y.C. Bd. of Elections et al.*, No. 161895/2025 (N.Y. Sup. Ct. N.Y. Cnty. Sept. 12, 2025) (NYSCEF Dkt. 9) (denying former independent mayoral candidate Jim Walden's request to enjoin the BOE from including Walden's name on the ballot for this upcoming general election because N.Y. Elec. L. § 6-146(4) requires that declinations of nominations for public office "be filed not later than five days after the mailing of nomination by such officer or board").

August 28 Notice.[68] However, both the 2025 Campaign's failure to file a CFB Rule 7-09 petition and the CFB's failure to attach this list, amount to technicalities of procedural process that do not prejudice the parties now.

Plaintiffs acknowledge that the August 28 Known Documents List was provided to the Adams Campaigns with the CFB's Opposition on September 16, 2025.[69] The CFB has therefore produced the list. Furthermore, the CFB produced a similar list to the Adams Campaigns with the August 7 Notice (the "August 7 Known Documents List").[70] Plaintiffs addressed each of the nine items on the August 7 Known Documents List in their Motion for Summary Judgment, and they addressed the additional eight items on the August 28 Known Documents List in their Reply.[71]

---

[68] (*See* Second Decl. of Paul S. Ryan Dated 9/16/2025 ("Second Ryan Decl.") (Dkt. 18-4) ¶ 11 (calling the CFB's failure to attach the list an "oversight," and explaining that the CFB "inadvertently failed to attach a copy" to the August 28 Notice); CFB's Responsive, Known Communications Omitted from Eric Adams 2021's & Eric Adams 2025's July 25 & August 1 Responses to the CFB's June 16, 2025 Request for Documentation ("August 28 Known Documents List") (Dkt. 18-9).)

[69] (*See* Pls.' Reply at 2.)

[70] (Responsive, Known Communications Not Received in Eric Adams 2021's & Eric Adams 2025's July 25 Response to the CFB's June 16, 2025 Request for Documentation ("August 7 Known Documents List") (Dkt. 11-8) at ECF pp.64-65.) The August 7 Known Documents List identifies 9 alleged, responsive documents omitted from the July 25 Response. The August 28 Known Documents List identifies 17 alleged, responsive documents omitted from the August 1 Response. However, both lists seek certain, responsive documents relating to fundraising events between May 2021 and October 2023 that the Adams Campaigns *should* have retained pursuant to their obligations under the CFA and CFB Rules. *See* CFB Rules 4-01 enumerating "records to be kept" by campaigns participating in the Program), 4-02 (requiring that records listed in CFB Rule 4-01 be retained "for five years").

[71] (*See* Pls.' Mot. at 10, 12-13, 14-19; Pls.' Reply at 4-5.)

Plaintiffs argue that the August 28 Known Documents List should not be part of the administrative record for review because "it is unclear whether this list was . . . drafted prior to the [August 28 Determination]" and "[i]nformation the CFB has gathered or disclosed during this litigation cannot was, by definition, not as basis for its decision and, therefore, cannot, as a matter of law, be used as a defense to justify its arbitrary and capricious denial."[72] This argument is unavailing because in *Scanlon* the New York Court of Appeals applied the long-standing rule that "judicial review of an administrative determination is limited to the grounds presented by the agency at the time of its determination." *Scanlan v. Buffalo Pub. Sch. Sys.*, 90 N.Y.2d 662, 678 (N.Y. 1997). Here, the record is clear that the CFB relied on the August 28 Known Documents List at the time it made the August 28 Determination.[73]

Furthermore, the CFB's inadvertent failure to attach the August 28 Known Documents List "would have been corrected" (and Plaintiffs would have had the list sooner), had the 2025 Campaign utilized the CFB's administrative remedy process by filing a CFB Rule 7-09 petition.[74] Plaintiffs cannot eat their cake and have it too: they cannot request that the court review their Article 78 claim, and have this court not consider the full administrative record before the CFB at the time the CFB made the challenged determination. In any event, and as previously noted, time is of the essence to resolve the parties' motions for summary judgment

---

[72] (Pls.' Reply at 4 (citing *Scanlan v. Buffalo Pub. Sch. Sys.*, 90 N.Y.2d 662, 680 n.2 (N.Y. 1997)).)

[73] (*See* CFB's 56.1 ¶ 84; Second Ryan Decl. ¶ 4(e); August 28 Notice at 5.) In fact, the August 28 Notice described the August 28 Known Documents List in detail, referring to the list as the "Attachment." (*See* August 28 Notice at 5.)

[74] (*See* Second Ryan Decl. ¶ 11; CFB's Mot. at 10 n.6.)

before an election that takes place five weeks from today. Accordingly, the court proceeds to the merits of Plaintiffs' Article 78 claim and the parties' respective motions.

### 2.    CFB Determination 1: Failure to Provide

In their motion for summary judgment, Plaintiffs argue that "the CFB's allegation that the Adams Campaign[s] withheld information is false" because "[e]very document requested . . . that is in the possession or control of the [Adams] Campaign[s] was produced, with the one exception of materials that the campaign[s] [were] prohibited by a federal court order from disclosing to the CFB."[75] Regarding the materials that have not been produced, Plaintiffs state that the Adams Campaigns "consented to the CFB seeking judicial relief from the [P]rotective [O]rder so that the campaign[s] might lawfully provide any requested materials covered by the injunction."[76] To succeed on their motion, Plaintiffs must show that the Adams Campaigns' document production was complete and accurate as to each of the CFB's document requests *and* that their written responses were complete and accurate as to each of the CFB's information requests by the deadline for the August 28 Determination. *See* CFB Rule 3-01(d)(i)(A)(2). They have not.

In its motion for summary judgment, the CFB argues that "[t]he undisputed facts demonstrate that [it] examined the record and rationally determined that the Adams Campaign[s] repeatedly failed to respond in a timely and forthright manner to the [CFB]'s requests for documents and other information necessary for evaluating eligibility," and that "[t]his conduct violates the [CFA] and the . . . [CFB] Rules . . . and mandates the denial of matching funds."[77] To succeed on its motion for summary judgment, the

---

[75] (Pls.' Mot. at 29.)

[76] (*Id.*)

[77] (CFB's Mot. at 1.)

CFB must show *either* that the Adams Campaigns' document production was incomplete *or* that the Adams Campaigns failed to provide accurate and complete information in response to the CFB's requests for information. *See* CFB Rule 3-01(d)(i)(A)(2). In fact, the CFB has shown both.

Because the undisputed facts show that the Adams Campaigns' document production is incomplete and that the Adams Campaigns failed to provide accurate and complete information in response to the CFB's requests, the court grants the CFB's motion for summary judgment for these two independent bases.

###### a. *The CFB's Requests for Documents and Information Are Proper*

The CFA states that "[t]o be eligible for optional public financing," a participating candidate must "obtain and furnish to the [CFB], and his or her principal committee or authorized committees must obtain and furnish to the [CFB], any information [the CFB] may request relating to his or her campaign expenditures or contributions and furnish such documentation and other proof of compliance." N.Y.C. Admin. Code § 3-703(1)(d). Similarly, the CFB Rules state that "public funds will not be paid to a candidate" if "the candidate fails to provide to the [CFB], upon its request and by the deadline set forth by the [CFB], documents or records required by Chapter 4 of these rules, or other information that verifies campaign activity." CFB Rule 3-01(d)(i)(A)(2).

On September 26, 2024, the Government unsealed the *Adams* Indictment.[78] The indictment alleged that Mayor Adams was part of a scheme to use straw donors to hide illegal contributions and improperly obtain Program matching funds for the 2021 and 2025 Campaigns.[79] The charged conduct implicated not only

---

[78] (CFB's 56.1 ¶ 19.)

[79] (*Id.* ¶ 21. *See generally Adams* Indictment at ECF pp.286-340.)

Mayor Adams and conduct relating to *his* participation in the Program, but also that of several current and former fundraisers for, and employees and agents of, the 2021 and 2025 Campaigns, including: (1) Rana Abbasova, a former Mayor Adams aide and staffer and admitted agent of the Adams Campaigns;[80] (2) Erden Arkan, a former Mayor Adams associate who fundraised for the 2021 Campaign;[81] (3) Mohamad Bahi, a former member of Mayor Adams' administration and admitted agent of the Adams Campaigns;[82] (4) Ahsan Chugtai, a former member of Mayor Adams' administration and admitted agent of the Adams

---

[80] The *Adams* Indictment refers to Abbasova as "the Adams Staffer." (*See* November 15 Request at ECF pp.344-45; August 28 Known Documents List at 1.) The *Adams* Indictment alleges, for example, that Mayor Adams directed Abbasova to "arrange . . . contributions" to the 2025 Campaign from Turkish nationals. (*Adams* Indictment, at ECF p.327.)

[81] "Arkan is identified in the *Adams* Indictment as 'Businessman-5.'" (Gov't's Letter to the Hon. Analis Torres & the Hon. Dale E. Ho Re *United States v. Eric Adams*, 24-CR-556 (DEH) (S.D.N.Y.) & *United States v. Erden Arkan*, 25-CR-014 (DEH) (S.D.N.Y.) & *United States v. Mohamad Bahi*, 25-CR-358 (AT) (S.D.N.Y.) Dated 2/7/2025) ("Govt.'s February 7 Letter") (Dkt. 11-2) at ECF p.405).)

[82] "Bahi is identified in the *Adams* Indictment as 'Adams Employee-1.'" (*Id.* at ECF p.405.) From approximately 2022 through October 2024, Bahi worked as a Senior Liaison in Mayor Adams' Community Affairs Unit. (*See* Sealed Complaint, *United States v. Mohamad Bahi*, No. 24-MAG-3535 (S.D.N.Y. Oct. 7, 2024) ("*Bahi* Compl.") (Dkt. 11-2) at ECF p.397.) Sworn FBI Agent affidavits provide additional evidence that Bahi was an "agent" of the 2025 Campaign. (*See* Affidavit in Support of Application for Warrant to Search and Seize (Dkt. 11-6 at ECF pp.198-199) ¶¶ 12-19.)

Campaigns;[83] and (5) Brianna Suggs, a 2021 Campaign fundraiser, a 2025 Campaign fundraiser, and an admitted agent of the Adams Campaigns.[84]

The court concludes that these individuals are "agents" of Mayor Adams and/or the Adams Campaigns because the undisputed facts and permissible, rational inferences drawn therefrom[85]—including those in the Arkan Production and the documents produced by the Adams Campaigns to the CFB—demonstrate that each person was "authorized by" Mayor Adams, the 2021 Campaign, or the 2025 Campaign, and that each person "act[ed] on behalf of or at the direction of" Mayor Adams or his relevant campaign.[86] N.Y. Elec. L. § 14-107; *see also* CFB Rule 1-02 (defining "fundraising agent" as an "individual[] . . . that ha[s] accepted or may accept contributions on behalf of the candidate" as a "paid or volunteer full-time campaign worker[]").

On January 10, 2025, Arkan pleaded guilty to committing wire fraud conspiracy in conjunction with an alleged straw donation scheme for the 2021 Campaign.[87]

---

[83] The Indictment refers to Chugtai as "Adams Employee-2." (*See* November 15 Request at ECF p.345; August 28 Known Documents List at 1; *Adams* Indictment at ECF p.305.)

[84] (*See Adams* Indictment at ECF pp.286-340.) The Adams Campaigns first recognized Suggs as a current or former employee, consultant, or agent of the Adams Campaigns on July 11, 2025. (CFB's 56.1 ¶¶ 42, 51, 58; July 11 Resp. at ECF pp.77-78.)

[85] *See Bohannon*, 824 F.3d at 255; *Coutard*, 848 F.3d at 114.

[86] In addition, the July 25 Response identified Abbasova, Bahi, Chugtai, and Suggs as current or former employees, consultants, or agents contacted by Campaign Counsel for responsive documents. (*See* CFB's 56.1 ¶ 69; July 25 Resp. at ECF p.119.)

[87] (*See* Information, *United States v. Erden Arkan*, No. 25-CR-013 (DEH) (S.D.N.Y. Jan. 10, 2025) ("*Arkan* Information") (Dkt. 11-2) at ECF pp.407-

On August 12, 2025, Bahi pleaded guilty to committing wire fraud conspiracy "from approximately 2020 through 2024, in conjunction with straw donation schemes for the 2021 Campaign and 2025 Campaign."[88]

Further, on May 8, 2023, the Manhattan District Attorney charged seven defendants with various state crimes in connection with a straw donor scheme "to fraudulently obtain tens of thousands of dollars in matching funds for [the 2021 Campaign] by submitting falsified campaign contribution forms to the [CFB]."[89] The charged conduct implicated unnamed "Campaign Representatives" of the 2021 Campaign and Mayor Adams.[90] On February 5, 2024, Dwayne Montgomery—a Mayor Adams associate—pleaded guilty to Count 1 of the *Montgomery et al.* Indictment, admitting to conspiracy in the fifth degree with the

---

09; Plea Transcript at 22:24-23:06, 24:24-25:25, *United States v. Erden Arkan*, No. 25-CR-013 (DEH) (S.D.N.Y. Jan. 10, 2025) ("*Arkan* Plea Tr.") (Dkt. 11-2) at ECF pp.410-39. *See also* First Ryan Decl. ¶¶ 53(d)-(e) ("Mayor Adams's associate Erden Arkan committed wire fraud, in connection with an alleged straw donation scheme for Mayor Adams's 2021 mayoral campaign."); Govt.'s February 7 Letter at ECF p.405 ("The conduct for which Arkan pled guilty forms a part of the conduct charged in Counts One and Two of the *Adams* Indictment").)

[88] (*See* August 28 Notice at 5; CFB's 56.1 ¶ 93. *See also* Information, *United States v. Mohamed Bahi*, No. 25-CR-358 (AT) (S.D.N.Y. Aug. 12, 2025) ("*Bahi* Information") (Dkt. 18-5); Plea Transcript, *United States v. Mohamed Bahi*, No. 25-CR-358 (DEH) (S.D.N.Y. Aug. 12, 2025) ("*Bahi* Plea Tr.") (Dkt. 18-6); Govt.'s February 7 Letter at ECF p.405 ("[The conduct Bahi pleaded guilty to] forms part of the conduct charged in Counts One and Two of the *Adams* Indictment.").)

[89] (Indictment, *People v. Montgomery et al.*, No. 72232-2023 (N.Y. Sup. Ct. N.Y. Cnty. May 8, 2023) ("*Montgomery et al.* Indictment") (Dkt. 11-4) at ECF p.305.)

[90] (*See id.* at ECF pp.306-15.)

intent of "offering a false instrument for filing" with the CFB.[91] The undisputed facts and permissible, rational inferences drawn therefrom also demonstrate that Montgomery was an "agent" as defined in the New York Election law and CFB Rules because he was "authorized by" Mayor Adams to and did accept contributions for the 2021 Campaign on his behalf.[92]

On August 20, 2025, the *New York Times* reported that a 2025 Campaign spokesman said that the campaign had "suspended" Winnie Greco—at the time, a 2025 Campaign volunteer and admitted agent of the Adams Campaigns[93]—after she handed a cash-filled bag of potato chips to a reporter following a 2025 Campaign fundraising event.[94] The undisputed facts—including text messages produced by the Adams Campaigns between Suggs and Greco, and Suggs, Greco, and Mayor Adams—demonstrate that Greco was an "agent" of the 2025 Campaign as defined in the New York Election Law and CFB Rules.[95]

The CFB is charged with "rigorous oversight" of the Program to serve its mission to "reduce the corrupting influence of money in politics." [96] Before a Program participant can receive public

---

[91] (Plea Transcript at 13:17-14:15, 15:04-09, *People v. Montgomery et al.*, No. 72232-2023 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 4, 2024) ("Montgomery Plea Tr.") (Dkt. 18-7); August 28 Notice at 5, 12.)

[92] (*See* August 28 Notice at 5, 12; *Montgomery et al.* Indictment at ECF pp.306, 308.)

[93] The July 25 Response identified Greco as a current or former employee, consultant, or agent contacted by Campaign Counsel for responsive documents. (*See* CFB's 56.1 ¶ 69; July 25 Resp. at ECF p.119.)

[94] *See* Bianca Pallaro et al., *Adams Adviser Suspended from Campaign After Giving Cash to Reporter*, N.Y. Times (Aug. 20, 2025).

[95] (*See, e.g.*, August 1 Resp. at ECF p.15 (texts between Suggs and Greco regarding a June 2023 fundraising event for the 2025 Campaign); *id.* at pp.116-21 (August 2023 texts between Suggs, Greco, and Mayor Adams regarding an upcoming fundraising event for the 2025 Campaign.).)

[96] (First Ryan Decl. ¶ 6.)

matching funds, the CFB must determine that the candidate has "met all eligibility requirements set forth in the [CFA] and the [CFB Rules]." CFB Rule 3-01(a). The aforementioned charges and convictions related to campaign corruption during Mayor Adams' participation in the Program for office of mayor from September 2019—when he first certified to the CFB that he was a 2021 mayoral candidate—through the present, compelled the CFB to investigate the conduct of Mayor Adams and the Adams Campaigns and to request documents and information to verify campaign activity.[97] The CFB is obligated to verify conduct relating to the 2021 Campaign in addition to verifying conduct relating to the 2025 Campaign.[98] *See* CFB Rule 3-01(d)(ii)(B).

As Plaintiffs concede, the CFB has "considerable investigative powers."[99] The CFA and CFB Rules provide the CFB with broad authority to "investigate all matters relating to the performance of its functions."[100] *See* N.Y.C. Admin. Code § 3-708(5); *see also* N.Y.C. Charter Ch. 46, § 1052(a)(5); N.Y.C. Admin. Code § 3-710(1). The CFB's document and information requests were proper because each request falls squarely within the CFB's investigatory powers in all aspects of campaign activity including, but not limited to, campaign contributions, fundraising, and fundraising activities.

---

[97] (*See* CFB's 56.1 ¶ 8.)

[98] Plaintiffs' suggestion that the June 16 Document Request was unreasonable because it included requests for information dating back to 2018 is without merit. (*See* Pls.' Mot. at 1.) It is perfectly appropriate for the CFB to request information relating to Mayor Adams' Program participation, including the 2021 Campaign. (*See* CFB's 56.1 ¶ 8.) *See* CFB Rule 3-01(d)(ii)(B); *see also* CFB Rule 4-10 ("The financial records of any committees of a candidate are subject to [CFB] review for purposes of monitoring the candidate's compliance with the requirements of the [CFA] and these rules and must be made available to the [CFB] upon request.").

[99] (Pls.' Mot. at 32.)

[100] (CFB's 56.1 ¶¶ 11, 27-28.)

Because the CFB's requests for documents and information are proper, the Adams Campaigns' failures to produce the requested responsive documents, and to provide complete and accurate requested information, compelled the CFB to find that the 2025 Campaign is ineligible for Program matching funds. *See* CFB Rules 3-01(a), 3-01(d)(i)(A)(2).

### b. The Adams Campaigns' Document Production Is Incomplete

The undisputed facts demonstrate two independent reasons as to why the Adams Campaigns' document production is incomplete. First, it does not include the responsive documents in the campaigns' possession and control that are covered by the Protective Order. Second, the document production does not include all responsive documents, which the CFB rationally determined exist, and are (or should be) in the Adams Campaigns' possession or control. The CFB Rules, therefore, mandate the CFB's ineligibility determination. *See* CFB Rule 3-01(d)(i)(A)(2).

*First,* it is undisputed that the document production does not include responsive documents covered by the Protective Order.[101] This fact is sufficient to deny Plaintiffs' motion for summary judgment. The CFB had no obligation to excuse the campaigns' failure to produce these documents. *See* CFB Rule 3-01(d)(i)(A)(2).

The CFB made its first document request on November 15, 2024, after Judge Ho entered the Protective Order on October 3, 2024.[102] The Protective Order defines "Disclosure Material" as "documents, objects[,] and information" disclosed to "the defendant"—meaning, Mayor Adams and his defense counsel—by

---

[101] (*See* Pls.' 56.1 ¶ 26 ("Mayor Adams is not permitted to provide the CFB with third-party documents or communications received from [the Government] in discovery that remain subject to the [P]rotective [O]rder.").)

[102] (CFB's 56.1 ¶ 27; November 15 Request at ECF pp.344-45; Pls.' 56.1 ¶¶ 18-19; Protective Order at ECF pp.112-17.)

the Government.[103] The Protective Order states that these materials produced by the Government to Mayor Adams, "shall not be disclosed by the defendant or defense counsel, . . . other than as set forth herein, and shall be used by the defense solely for purposes of defending this action."[104] The Protective Order further states that "[t]he Government may authorize, in writing, disclosure of Disclosure Material beyond that otherwise permitted by this Order without further Order of this Court."[105]

On December 5, 2024—three weeks after the CFB's first document request—Campaign Counsel responded to the November 15 Document Request, stating that "this is not something that we can respond to at this time" (the "December 5 Response").[106] The response neither disclosed the existence of, nor explained whether the Adams Campaigns were in possession or control of responsive documents subject to, the Protective Order.[107] The Adams Campaigns waited over nine months to disclose this information.[108] The Adams Campaigns were required to provide this information to the CFB earlier. *Cf. Adams I*, at *13 ("The Adams Campaign had no excuse to wait until less than 12 hours before the CFB meeting on April 15, 2025 to respond to the [CFB's] proper request.").

Plaintiffs' argument that the Protective Order "is a public document, not a record that the Adams Campaign[s] held secretly until it was 'revealed,'" does not convince the court otherwise.[109] Plaintiffs argue that the CFB should have "followed the docket

---

[103] (Protective Order ¶ 1.)

[104] (*Id.* ¶ 5.)

[105] (*Id.* ¶ 10.)

[106] (CFB's 56.1 ¶ 29.)

[107] (*See id.* ¶ 39.)

[108] (*See id.* ¶ 66; July 25 Resp. at ECF pp.108-10.)

[109] (Pls.' 56.1 Resp. ¶ 39.)

entries" in Mayor Adams' now-dismissed criminal case "like a hawk" so that it could have "become aware of the [Protective Order] as soon as it was listed on the public docket."[110] Plaintiffs argue further that the CFB then should have "conferred with the United States Attorney's Office and asked the Government for information relevant to [the CFB's] investigation into the Adams Campaign[s]."[111] To argue that *the CFB* was under such obligations misconstrues the fundamental nature of the voluntary Program by shifting the participant's burden onto the CFB. The CFB Rules mandate that to receive Program matching funds, "*candidates* must demonstrate eligibility." CFB Rule 3-01 (emphasis added). The rules further prescribe that "public funds *will not be paid* to a candidate if . . . the candidate fails *to provide to the [CFB]*" documents or information that verify campaign activity. CFB Rule 3-01(d)(i)(A)(2) (emphases added).

In addition to its obligation to protect the public trust, the CFB also has the important obligation to protect the public fisc. Participating candidates who qualify for matching funds receive eight dollars in public funds for every one dollar a New York City resident contributes to the candidate's campaign (up to $250).[112] This ratio places a significant fiscal burden on the City of New York. The CFB's administration of the Program and concomitant duty to "hold[] candidates accountable for using public funds responsibly,"[113] includes the obligation to determine the eligibility of *over 90* participating candidates in the current election cycle, including several other offices besides mayor.[114] If the court were

---

[110] (Pls.' Mot. at 11.)

[111] (*Id.*)

[112] (First Ryan Decl. ¶ 16.)

[113] (*Id.*)

[114] (*See* Press Release, *NYC Campaign Finance Board Approves Pre-General Matching Funds Payments to 2025 Candidates,* N.Y.C. Campaign Fin. Bd. (Aug. 28, 2025) (Dkt. 18-10).)

to accept Plaintiffs' rewriting of the CFB Rules, the administrative burden on the CFB to seek out every document that could theoretically be publicly accessible would make the Program unworkable. Even if it were theoretically possible for the CFB to seek out public information for a single participant, this burden, compounded over 90 Program participants, would place an unmanageable burden on the CFB's ability to adhere to its statutory obligations of promptly providing Program matching funds to eligible candidates running for city office. The court rejects Plaintiffs' reading of the CFB Rules.

Finally, the court is troubled by Plaintiffs' arguments regarding the reach and scope of the Protective Order. Plaintiffs argue, for example, that certain text messages between Abbasova and Reyhan Özgür, a Turkish official implicated in the *Adams* Indictment,[115] regarding a "list of contributions collected during" a campaign event in May 2021, are "communication[s] . . . with a third party and therefore cannot be produced under the terms of the [P]rotective [O]rder."[116] The Protective Order does not cover "communication[s] . . . with a third party"; it covers materials disclosed by the Government to Mayor Adams and his defense counsel.[117] Further, the Protective Order also states that "[n]othing in this Order limits the defense's use of [Electronically Stored Information ("ESI")] obtained from the defendant's own devices or accounts or documents produced by the defendant to the Government in his individual capacity."[118] Plaintiffs' argument contradicts the clear language of the Protective Order. It

---

[115] The *Adams* Indictment refers to Özgür as "the Turkish Official." (*See* June 16 Request at ECF pp.59-60.) The *Adams* Indictment alleges that Özgür "facilitated many straw donations to [Mayor Adams]." (*Adams* Indictment at ECF p.288.)

[116] (*See* Pls.' Mot. at 15.)

[117] (Protective Order ¶ 1.)

[118] (*Id.* ¶ 5.)

also calls into doubt the completeness of the Adams Campaigns' production of responsive documents not subject to the Protective Order.

*Second*, the undisputed facts also show that the CFB rationally determined that the Adams Campaigns' document production does not include several responsive documents that should have been produced.[119] For example, the CFB rationally determined that certain communications related to a fundraising event for the 2021 Campaign should have been produced.[120] The undisputed material facts show that a May 20, 2021 email from Elif Ok to Abbasova, copying Arkan and attaching "catering receipts and invoices" from this fundraising event: (i) does, in fact, exist; (ii) that the Adams Campaigns were required to maintain the email and its attachments pursuant to the CFA and CFB Rules; and (iii) that the email and its attachments were not produced to

---

[119] The court acknowledges that not every document identified in the August 28 Known Documents List is independently sufficient to trigger a finding that the Adams Campaigns failed to produce all responsive documents in their possession or control to the CFB. For example, the CFB cannot claim that the document production is incomplete based solely on the Adams Campaigns' alleged failure to provide a "September 20, 2023 video of fundraising event." (August 28 Known Documents List at 2; *see also* August 7 Known Documents List at ECF p.65 (identifying the same video).) First, the CFB's only support for the existence of this video is the *Adams* Indictment, and as this court determined in *Adams I*, the CFB's sole reliance on the Indictment violates Plaintiffs' constitutional rights. *Adams I*, at *16-17. Second, the CFB acknowledges that "CFB staff [is] not sure who took or possessed [the] video." (August 28 Known Documents List at 2; *see also* August 7 Known Documents List at ECF p.65 (same).) Accordingly, the CFB has no rational basis on which to conclude that the video amounts to a "responsive, known" document in the campaigns' possession or control. (*See* August 28 Known Documents List at 2.)

[120] (*See* August 7 Known Documents List at ECF p.64; August 28 Known Documents List at 1.)

the CFB by the Adams Campaigns. [121] *See* CFB Rule 4-01(b)(ii)(E) ("[f]or each in-kind contribution, candidates must maintain a written record that provides" certain, enumerated information about the contribution and the contributor), (b)(iii) (requiring "Candidates" to maintain "a photocopy of each check or other monetary instrument, other than cash, representing a contribution or other monetary receipt."), (e) ("Candidates must maintain records for all fundraising events, which must contain [certain, enumerated information]."). Further, these documents are material because: (1) the provision of food and beverages at campaign fundraising events is considered an "in kind contribution" that campaigns must maintain records for, and report to, the CFB; and (2) the CFB's records show that no in-kind donation was reported for this fundraising event. [122] *See* CFB Rules 4-01(b)(ii)(E), (b)(iii), 4-05(c)(i).

For example, the CFB also rationally determined that the document production should, but does not include, certain communications related to a fundraising event for the 2025 Campaign. [123] The undisputed facts show that the document production does not include the complete July 2023 text conversation between Mayor Adams and Arda Sayiner, a Turkish national implicated in the *Adams* Indictment,[124] discussing this

---

[121] (Sealed Arkan Production at 23-25 (producing the email and attached receipts).)

[122] (*See* August 28 Notice at 12; *see also* FBI Agent Affidavit (Dkt. 11-8 at ECF p.27) ¶ 19.)

[123] (*See* August 7 Known Documents List at ECF pp.64-65; August 28 Known Documents List at 2.)

[124] The *Adams* Indictment refers to Sayiner as "the Promoter." (*See* June 16 Request at ECF p.59.) The *Adams* Indictment alleges that Sayiner offered to procure contributions and/or straw donations in exchange for Mayor Adams' appearance at a fundraising event for the 2025 Campaign, and alleges that he both "collect[ed] campaign contributions for [Mayor Adams] in Turkey" and told Mayor Adams that "he would be able to raise more

fundraising event and its attendees.[125] The undisputed facts show that the August 1 Response produced a screenshot of that text conversation, which is not complete because part of a text message in the screenshot is truncated.[126] The truncated message shows a link to "Read More," but the produced documents do not include the additional information at that link.

Plaintiffs' argument that "it [is] clear from the context of the text messages . . . that this truncated message was a separate, non-responsive communication unrelated to the [2025] [C]ampaign," does not convince the court otherwise.[127] The CFB rationally concluded that the truncated message was responsive because it only begins to identify a group of individuals, which the next text message—the only message from the text conversation that Plaintiffs claim is responsive—appears to reference. That next message, addressed to Mayor Adams, states: "If you are interested in *these people* I will invite them to meet you in NYC before or after the dinner I'm organizing for you in September."[128] The CFB's determination that the truncated message is related to the last message and therefore responsive was rational because it is reasonable that "these people" refers to the individuals identified and discussed in the previous, truncated message. Furthermore, the CFB explained its reasonable conclusion to the Adams Campaigns in the August 7 Notice.[129] However, the Adams Campaign produced no additional documents and provided

---

money for the 2025 Campaign if [Mayor Adams] visited Turkey and met with Turkish businesspeople." (*See id.* at ECF p.64; *see also Adams* Indictment at ECF p.327 (further alleging that Mayor Adams told Sayiner "to coordinate with [Abbasova] to arrange the contributions").)

[125] (August 1 Resp. at ECF p.17.)

[126] (*See id.*)

[127] (*See* Pls.' Mot. at 13.)

[128] (*Id.* (emphasis added).)

[129] (August 7 Notice at 4; *see* August 1 Resp. at ECF p.17.)

no additional information—including as to why the truncated message should not be produced to the CFB prior to the August 28 Determination. Accordingly, the CFB had a rational basis to determine that the Adams Campaigns' response to the CFB's request for documents verifying the campaign's fundraising activities is incomplete.

As a final example, the undisputed facts show that the Adams Campaigns failed to produce any text messages between Mayor Adams and Suggs, a fundraiser for both the 2021 Campaign and the 2025 Campaign.[130] The failure to produce any text messages between the participating candidate and a top fundraiser for his campaigns—or otherwise explain why these texts were not produced—provides another independent and rational basis for the CFB's determination that the document production is incomplete.

The examples above are requested, responsive documents that are (or otherwise should be) in the control of the Adams Campaigns, which were not produced to the CFB in response to its document requests. Consequently, the Adams Campaigns' failure to provide these documents renders the document production incomplete and compels the CFB's ineligibility determination. *See* CFB Rule 3-01(d)(i)(A)(2).

The CFB's Failure to Provide Determination is based on its conclusion that that the Adams Campaigns failed to timely and completely produce responsive documents to the CFB's document requests. The CFB is entitled to summary judgment on Plaintiffs' Article 78 claim because the undisputed facts show that the document production is incomplete.

---

[130] (*See* August 28 Known Documents List at 3 ("Sugg's texts to Eric Adams were not provided."). *See generally* August 1 Resp.)

c. *The Adams Campaigns Did Not Provide Requested Information*

The CFB is also entitled to summary judgment on Plaintiffs' Article 78 claim for the independent and sufficient reason that the undisputed facts show that the Adams Campaigns failed to completely respond to the July 14 Information Request.[131]

*First*, the CFB directed the Adams Campaigns to provide certain information about Mayor Adams' search for responsive documents.[132] The campaigns' response is incomplete because it fails to provide requested information regarding: (1) "when [Mayor Adams] completed his search"; and (2) whether Mayor Adams' "search for responsive documents included documents provided to him by the [G]overnment as part of discovery in [his criminal case]."[133] In addition, it is unclear from the campaigns' response when Campaign Counsel first asked Mayor Adams to provide responsive documents.[134]

*Second*, the CFB directed the Adams Campaigns to identify individuals contacted by Campaign Counsel for responsive documents.[135] The July 25 Response included a list of 31 individuals and stated that "[t]he list is comprehensive in scope."[136] However, the response did not explain: (i) why the prior list of individuals (submitted on July 11, 2025) contained only 11 individuals; (ii) when the additional 20 individuals on the list had been contacted; or (iii) whether these individuals had provided

---

[131] (*See* CFB's July 14 Info. Request at ECF pp.80-81.)

[132] (*Id.* at ECF p.80.)

[133] (*Id.*)

[134] (*See* July 25 Resp. at ECF pp.108-09.)

[135] The CFB wrote that "[a] more comprehensive identification of such individuals is necessary to ensure the completeness of any document production." (July 14 Info. Request at ECF p.81.)

[136] (July 25 Resp. at ECF pp.119, 108-09.)

responsive documents.[137] The Adams Campaigns' supplemental response on August 1 did not provide this information. Rather, the August 1 Response stated that "some" of the individuals provided documents, "others" indicated that they had no responsive documents, "others" did not respond, and "one" declined to provide materials on advice of counsel.[138] The August 1 Response did not identify these individuals, and it did not explain how many individuals responded.[139]

Plaintiffs argue that the Adams Campaigns' obligation to respond to the July 14 Information Request did not include providing this information because the "CFB did not request this information, nor had it in any time in the past."[140] This argument is unavailing for two principal reasons. *First*, prior to submitting the August 1 Response, Campaign Counsel requested confirmation from the CFB's General Counsel that "no additional information is being requested other than what was identified in the document request."[141] The CFB's General Counsel responded that "CFB staff will review the . . . response after submission and will notify the [Adams Campaigns] at that time if additional documentation or information is requested."[142] Therefore the CFB did not foreclose any additional requests, and explicitly told Campaign Counsel that additional information may be necessary. *Second*, the Adams Campaigns should have known that the failure to identify these individuals would result in the CFB's finding that the August 1

---

[137] (*See* July 11 Resp. at ECF pp.77-78; July 25 Resp. at ECF pp.108-09.)

[138] (Pls.' 56.1 ¶ 28; August 1 Resp. at ECF p.15.)

[139] (*Id.*)

[140] (Pls.' Mot. at 12.)

[141] (Email from Vito Pitta to Joseph Gallagher Dated 8/1/2025 9:44 A.M. (Dkt. 11-4) at ECF p.7.)

[142] (Email from Joseph Gallagher to Vito Pitta Dated 8/1/2025 2:11 P.M. (Dkt. 11-4) at ECF p.6.)

Response was incomplete. The July 14 Information Request explained that "[a] more comprehensive identification" of current and past employees, consultants, and agents" contacted by Campaign Counsel was necessary in order to allow the CFB "to ensure the completeness of any document production."[143] Thus, the CFB specifically told the Adams Campaigns that a full accounting of these individuals was necessary, and that the CFB's evaluation of the document production would not be possible without knowing *which* of the individuals did or did not provide responsive documents.[144]

Furthermore, the August 7 Information Request directed the Adams Campaigns to disclose the identities of the individuals described in the August 1 Response, explaining that "[a]bsent [this] information[,] . . . the CFB cannot conduct a complete independent investigation."[145] It is undisputed that after receiving the August 7 Notice, the Adams Campaigns took no action to remedy the inadequacies of its responses to the CFB's information requests. Therefore, the Adams Campaigns' failure to provide this information before the August 28 Determination renders the campaigns' response to the July 14 Information Request incomplete.

The two aforementioned deficiencies in the Adams Campaigns' responses to the July 14 Information Request each provide an independent basis for finding that the Adams Campaigns failed

---

[143] (July 14 Request at ECF p.81.)

[144] (*See also* CFB's June 16 Request at ECF p.58 (requesting identities of individuals contacted by Campaign Counsel to assess the completeness of the Adams Campaigns' document production, which at that time included no documents).)

[145] (August 7 Notice at ECF p.53 ("Information on who has invoked their Fifth Amendment rights or otherwise did not reply is crucial to the CFB's issuance of subpoenas *ad testificandum*.").)

to provide requested information to the CFB. Because the undisputed facts show that the Adams Campaigns' responses to the CFB's requests for information are incomplete, the court grants the CFB's motion for summary judgment on the Article 78 claim for this independent reason and denies Plaintiffs' motion for summary judgment.

* * *

The undisputed facts show that the Adams Campaigns failed to timely, forthrightly, and completely respond to the CFB's document and information requests as required under N.Y.C. Admin. Code § 3-703(1)(d) and CFB Rule 3-01(d)(i)(A)(2).[146] This conduct violates the CFA, it violates the CFB Rules, and it results in the 2025 Campaign's Program ineligibility. *See id.* Therefore, Plaintiffs' motion for summary judgment is denied and the CFB's motion for summary judgment is granted.

### 3. CFB Determination 2: Reason to Believe

The CFB is also entitled to summary judgment for the independent and sufficient reason that the undisputed facts show that the CFB had a rational basis for determining that there is "reason to believe" that Mayor Adams, his agents, and agents of the Adams Campaigns engaged in conduct detrimental to the Program and in violation of law. While this finding does not *compel* the CFB to find that the 2025 Campaign is ineligible for Program matching funds, it allows a discretionary finding of ineligibility. Here, the CFB's discretionary determination was rational and in accordance with state and federal law and must be upheld.

#### a. The CFB's "Reason to Believe" Standard

The CFB Rules authorize the CFB to determine that a participant is ineligible for Program matching funds where there is "reason

---

[146] This is true as to both the August 6 Determination and the August 28 Determination.

to believe" that in the course of Program participation, "the candidate" engaged in conduct detrimental to the Program and in violation of law. CFB Rule 3-01(d)(ii)(B).

At first blush, the "reason to believe" standard may seem amorphous. However, the standard exists in federal law and throughout New York state law.[147]

In the Fourth Amendment context, the Second Circuit has defined a "reason to believe" standard as requiring "more than a hunch . . . but less than a probability." *United States v. Bohannon,* 824 F.3d 242, 255 (2d Cir. 2016) (interpreting the "reason to believe" standard for law enforcement officers to execute a constitutional arrest warrant in a dwelling other than the subject's so long as there is "reason to believe that [the subject] was then in the premises entered"). The Second Circuit held that this "reason to believe is a lesser standard" than "probable cause." *Id.* at 253; *see also id.* at 254 (holding that the "reason-to-believe review . . . does not demand probable cause" in this context). While acknowledging that the "reason to believe is not a particularly high standard," the Second Circuit explained that "it *does* require specific and articulable facts that, taken together with rational inferences drawn therefrom, provide a particularized and objective basis for [the determination]." *Id.* at 255 (emphasis added).

---

[147] *See, e.g.,* 7 U.S.C. § 228a ("Whenever the Secretary has reason to believe that . . ."); 15 U.S.C. § 56(b) ("Whenever the Commission has reason to believe that . . ."); 19 U.S.C. § 3571(b)(2) ("An interested party may request that the administering authority determine if there is reason to believe that . . ."); N.Y. Educ. L. § 313(5)(b) ("Where the commissioner has reason to believe that an applicant or applicants have been discriminated against . . ."); N.Y. Exec. L. § 298-a(3) ("If the division of human rights has reason to believe that a non-resident person or foreign corporation has committed or is about to commit outside of this state an act . . . it shall serve a copy of the complaint . . ."); N.Y. Labor L. § 459(1) ("A license or certificate, or the renewal thereof may be denied where the commissioner has probable reason to believe . . .").

If this "reason to believe" standard is sufficient to guarantee the Fourth Amendment's privacy rights and the constitutional guarantee to be free of unreasonable searches and seizures, it is sufficient to protect a person's First Amendment free speech rights—certainly in this context, where an ineligibility determination "does not prevent the underlying contribution from reaching the campaign" and therefore is subject to a "less stringent standard of review" than strict scrutiny. *See Adams I*, at *15.

In addition, while the *Adams I* decision is not binding on this court, it is instructive. The general rule from *Adams I* is that although the CFB cannot rely *solely* on the dismissed *Adams* Indictment to prove a fact, it can take that indictment into account to the extent that the alleged facts or conduct therein are corroborated in other sources and through the CFB's independent fact-finding. *See id.* at *16.

In sum, under the CFB's "reason to believe" standard, the CFB must show that the Reason to Believe Determination was grounded in "specific and articulable facts" drawn from sources other than the dismissed *Adams* Indictment, that "taken together with rational inferences drawn therefrom, provide a particularized and objective basis for" determining that "in the course of Program participation, the candidate has engaged in conduct detrimental to the Program that is in violation of any other applicable law." *Bohannon*, 824 F.3d at 255; CFB Rule 3-01(d)(ii)(B).

### b. The CFB's Decision to Deny Funds Based on its "Reason to Believe" Was Neither Arbitrary nor Capricious

The undisputed facts provide multiple, independent reasons to support each of the CFB's theories supporting its "reason to believe" that "the candidate" engaged in conduct detrimental to the Program and in violation of law during Mayor Adams' participation in the Program. Significantly, the CFB had "reason to believe" that "the candidate" as that term is defined in the CFB

Rules violated the law in the course of Program participation, in part, due to their agents' convictions. *See Liu*, 2015 WL 1514904, at *9; *supra* Part III.A.2.a.

Pursuant to CFB Rule 3-01(d)(ii)(B), the CFB may find a participant ineligible for Program matching funds on a discretionary basis "if there is reason to believe that, in the course of Program participation, the candidate has engaged in conduct detrimental to the Program that is in violation of any other applicable law." The CFB Rules define "the candidate" to include not only the individual running for office, N.Y. Elec. L. § 14-100(7), but also "every authorized committee of the candidate, the treasurer of each such committee, and any other agent of the candidate." CFB Rule 1-02. In turn, the New York State Election Law defines an "agent" as "a person authorized by the candidate or the candidate's authorized committee, who acts on behalf of or at the direction of a candidate or the candidate's authorized committee." N.Y. Elec. L. § 14-107. Furthermore, the CFB Rules define "fundraising agent[s]" as including "paid or volunteer full-time campaign workers" who "have accepted or may accept contributions on behalf of the candidate." CFB Rule 1-02.

As already explained, "agents" of Mayor Adams and the Adams Campaigns have already been convicted by federal and state prosecutors in conjunction with straw donor schemes for the 2021 Campaign. The conduct of these agents was "detrimental to the Program" because each criminal conspiracy for which they were convicted involved the fraudulent obtainment of tens of thousands of dollars in Program matching funds. The conduct was also in violation of law.[148] *See supra* Part III.A.2.a.

---

[148] Plaintiffs' suggestion that the CFB's "reason to believe" is limited to the 2025 Campaign is without merit. (*See* Pls.' Mot. at 29.) The relevant time period is not limited to the 2025 election cycle, but encompasses Mayor Adams' Program participation. *See* CFB Rule 3-01(d)(ii)(B). *See also* CFB

Furthermore, and as explained *infra* Part III.B.1, the CFB's independent fact-finding provided ample additional support for the CFB's "reason to believe" that from September 2019 through the present, "the candidate" (including Mayor Adams and his agents) engaged in additional conduct detrimental to the Program and in violation of state and federal law.

## B. Plaintiffs' Constitutional Challenges

Plaintiffs bring two Section 1983 claims based on the alleged infringement of their free speech rights under the New York State and U.S. Constitutions, alleging that the CFB's ineligibility determination: (1) violates the First Amendment's free speech protections as applied to the 2025 Campaign because the CFB's Failure to Provide and Reason to Believe Determinations "lack any factual basis," "result from a misapplication of law," and were "not narrowly tailored to achieve any legitimate governmental objective"; and (2) violates the Fourteenth Amendment's substantive due process protections as applied to the 2025 Campaign because "there is no evidence to support the [CFB's] findings that the Adams Campaign[s] failed to provide requested information that was within [their] possession or control."[149]

Because the undisputed facts show that the CFB has met its burden of proving the constitutionality of its actions, the court denies

---

Rules 2-01(b) ("[T]he requirements of the [CFA] and these rules apply to financial transactions that take place before a candidate registers [with the Program]."), 4-02 ("The candidate must retain all records and documents required to be kept under section 4-01 for five years from the filing of a final statement."), 4-10 ("The financial records of any committees of a candidate are subject to [CFB] review for purposes of monitoring the candidate's compliance with the requirements of the [CFA] and these rules and must be made available to the [CFB] upon request.").

[149] (Compl. ¶¶ 59, 63.) For the reasons fully explained in *Adams I*, the court concludes that Plaintiffs "cannot bring a successful substantive due process challenge" because "their due process claim based on their free speech interest is duplicative of their First Amendment challenge." *Adams I*, at *19.

Plaintiffs' motion for summary judgment and requests for relief pursuant to Sections 1983 and 1988, and grants the CFB's motion for summary judgment on these claims. *First,* the CFB has met its burden of identifying a sufficiently important government interest justifying the "reason to believe" standard because "[CFB] Rule 3-01(d)(ii)(B) serves the goal of eliminating corruption or the appearance thereof which is a sufficiently important governmental interest." *Adams I,* at *15 (internal quotes omitted). *Second,* as applied to the 2025 Campaign, the rule is "closely drawn" to serve this sufficiently important government interest. *See F.E.C. v. Beaumont,* 539 U.S. 146, 161 (2003); *Ognibene v. Parkes,* 671 F.3d 174, 183 (2d Cir. 2011). *See also Adams I,* at *15 (determining that the court "must apply the less stringent standard of review of whether [CFB Rule 3-01(d)(ii)(B)] is closely drawn" because "the rule does not prevent the underlying contribution from reaching the campaign").

### 1. The CFB's Ineligibility Determination Is "Closely Drawn"

Plaintiffs claim that the CFB's Reason to Believe Determination is "as fatally flawed as it was in *Adams I.*"[150] In *Adams I,* this court concluded that the plaintiffs had plausibly alleged an as-applied First Amendment claim challenging the CFB's "reason to believe" standard because the CFB engaged in no independent factfinding and relied solely on the dismissed *Adams* Indictment. *See Adams I,* at *14-17. Here, the CFB has met both requirements.

As detailed below, the CFB engaged in an independent investigation to corroborate the allegations brought against Mayor Adams, as well as allegations brought by federal and state prosecutors against his current and former campaign fundraisers and

---

[150] (*Id.* ¶ 6.)

agents.[151] Significantly, the charged conduct relates to the Adams Campaigns' fundraising activities, including their efforts to obtain Program matching funds, and directly implicates Mayor Adams, his agents, and other agents of the Adams Campaigns during Mayor Adams' participation in the Program.[152] Consequently, the CFB is entitled to summary judgment because its determination that the 2025 Campaign is ineligible for Program matching funds is "closely drawn" to the sufficiently important government interest of preventing quid pro quo corruption. *See Adams I*, at *15.

*First*, the CFB's independent factfinding included a review of documents produced by the Adams Campaigns to the CFB, as well as Mayor Adams' 2019 and 2021 COIB disclosure statements.[153] Relying on this review, the CFB rationally determined that Mayor Adams' COIB disclosures violated various provisions of New York State Election law and the CFB Rules by failing "to disclose gifts to the NYC Conflicts of Interest Board" while Mayor Adams was a Program participant.[154] Moreover, the CFB's review of the Adams Campaigns' document production also demonstrates that the CFB had a rational basis for its "reason to believe" that "the candidate" violated additional state and federal laws through the failure to provide complete and accurate information to the CFB.[155] For example, the Adams Campaigns produced a conversation in the Signal application between Mayor Adams, Suggs, and Greco discussing a then-upcoming fundraising event for the

---

[151] (*See* CFB's 56.1 ¶¶ 72-73, 75, 84, 93; August 7 Notice at ECF p.5; August 28 Notice at 5.)

[152] (*See generally Adams* Indictment; *Arkan* Information at ECF pp.407-08; *Bahi* Information at ECF pp.396-402; *Montgomery et al.* Indictment at ECF pp.304-34.)

[153] (*See* CFB's 56.1 ¶¶ 73, 75.)

[154] (*See* August 28 Notice at 14.)

[155] (*See id.* at 1-15.)

2025 Campaign and Greco's list of event attendees and contributors. [156] The last message in that conversation is a "System Message" notifying the group that "Eric Adams set disappearing message time."[157] While the 2025 Campaign cannot fail to produce documents that do not exist, this last text message provides additional support for the CFB's "reason to believe," based on sworn FBI Agent affidavits and the initial, federal complaint filed against Bahi, that Mayor Adams, while fundraising for the 2025 Campaign, engaged in conduct detrimental to the Program and in violation of law.[158]

As previously explained, by opting into the Program, Mayor Adams and the 2025 Campaign voluntarily took on certain obligations under the CFA and CFB Rules to save and maintain certain records, relating to campaign fundraising events, contributions, and contributors.[159] *See* CFB Rules 4-01, 4-02. By setting this Signal chat to "disappearing messages," Mayor Adams failed

---

[156] (August 1 Resp. at ECF pp.130-35; *see also* August 28 Known Documents List at 4 ("[The 2025] Campaign produced what appears to an incomplete excerpt of this conversation. Brianna Suggs says 'Winnie send it here', but the following texts do not appear and Eric Adams appears to have set . . . them to 'disappearing.'").)

[157] (August 1 Resp. at ECF p.135.) By turning on "disappearing messages" the "message will disappear from your devices." Signal, *Set and manage disappearing messages,* available at https://support.signal.org/hc/en-us/articles/360007320771-Set-and-manage-disappearing-messages [https://perma.cc/CRK9-LR8G] (last visited Sept. 30, 2025). The "setting applies to any new messaging" for the duration of the time period set by the user and are "*deleted from the disk.*" *Id.* (emphasis added).

[158] (*See Bahi* Compl. at ECF pp.400-01 ("Bahi's destruction of evidence"); August 28 Notice at 7 ("[E]vidence presents reason to believe that Mayor Adams obstructed justice, attempted to obstruct justice, and/or engaged in a conspiracy to obstruct justice by making efforts to hide his receipt of straw donations from law enforcement and investigators.")

[159] (*See* CFB's 56.1 ¶ 9.)

to maintain records verifying the 2025 Campaigns' activities with regard to the fundraising event discussed in this chat.[160]

The last message also serves as corroborative evidence of conduct described in other materials reviewed by the CFB and upon which the CFB based its "reason to believe" that "the candidate" (Mayor Adams and his agents) "[o]bstructed justice and engaged in a conspiracy to obstruct justice" in violation of federal laws.[161] For example, the CFB reviewed "sworn FBI Agent Affidavits describ[ing] how Mayor Adams may have engaged in obstruction behavior . . . such as by deleting incriminating text messages."[162] Finally, this example further demonstrates how the CFB's independent factfinding—not the dismissed *Adams* Indictment—supports the Reason to Believe Determination.

*Second*, the CFB's independent factfinding also included the CFB's review of, *inter alia*, "other documents" that the CFB "obtained in the course of its independent investigation."[163] These "other documents" include documents produced in response to 17 subpoenas issued by the CFB to third parties, including the Arkan Production.[164] The CFB "independently considered the credibility of the facts alleged in these documents and the sources of those allegations" and then applied "the credibly alleged facts

---

[160] CFB Rule 4-01 requires candidates to, among other things, "keep records that enable the [CFB] to verify the accuracy of disclosure statements." *See* CFB Rule 4-01(a)(i). CFB Rule 4-02 states: "The candidate must retain all records and documents required to be kept under section 4-01 for five years from the filing of a final statement."

[161] The court makes no conclusion as to whether Mayor Adams or his agents did, in fact, "obstruct[] justice" or "engage[] in a conspiracy to obstruct justice." (August 28 Notice at 7.)

[162] (August 28 Notice at 7. *See e.g.*, Agent Affidavit in Support of Application for Search and Seizure Warrant (Dkt. 11-6 at ECF pp.288-89) ¶ 11.)

[163] (August 7 Notice at ECF p.54; August 28 Notice at 5; *see also* CFB's 56.1 ¶¶ 72-73, 75, 84, 93.)

[164] (CFB's 56.1 ¶¶ 72-73.)

to the law" to make the Reason to Believe Determination.[165] The CFB also adequately explained how these "other documents" gave the CFB "reason to believe" that "the candidate" (including Mayor Adams and his agents), while participating in the Program, engaged in conduct detrimental to the Program and in violation of various other federal and state laws.[166]

For example, the CFB adequately explained how its review of Bahi's plea allocution, and the underlying Information to which he pleaded guilty, supports its "reason to believe" that Mayor Adams and agents of the Adams Campaigns engaged in conduct detrimental to the Program and in violation of federal and state law while "engag[ing] in multiple straw donations schemes for [Mayor Adams'] 2021 and 2025 mayoral campaigns while a Program participant." [167] Bahi pleaded guilty to a one-count Information charging him with conspiracy to commit wire fraud relating to his involvement in various campaign finance violations for the Adams Campaigns from at least 2020 through 2024.[168] Bahi allocated as follows:

> In December 2020, I helped to organize a fundraising event in New York City in which employees of the construction company owner hosting the event were reimbursed by the

---

[165] (August 7 Notice at ECF p.5; August 28 Notice at 5.)

[166] (*See generally* August 7 Notice at ECF pp.5-14; August 28 Notice at 5-15.)

[167] (*See* August 28 Notice at 6 (wire fraud), 8-9 (failure to disclose), 10 (election conspiracy).); CFB's 56.1 ¶¶ 75(b), 84, 93-94.) The court makes no conclusions as to whether Mayor Adams did, in fact, "commit[] wire fraud, in violation of 18 U.S.C. § 1343," "fail[] to accurately disclose campaign transactions and the true identity of contributors, in violation of [various state laws]," or "engage[] in a conspiracy to promote his election through unlawful means, in violation of NYS Election Law § 17-152." (*See* August 28 Notice at 6 (wire fraud), 8-9 (failure to disclose), 10 (election conspiracy).)

[168] (*Bahi* Information ¶¶ 1-2.)

owner for their campaign contributions. I knew that this was occurring because I had been instructed by a volunteer of the campaign to tell the owner of the construction company that the donations could be made this way. I understood that the Adams campaign would then seek matching funds for those donations[.][169]

Bahi's plea allocution, including the underlying Information to which he pleaded guilty, together with the other evidence reviewed by the CFB demonstrates that the CFB rationally determined that Bahi was an "agent" of the Adams Campaigns as defined in the New York Election Law and CFB Rules.[170] Consequently, the CFB rationally determined that there is "reason to believe" that during Program participation, "the candidate" (including agents of the Adams Campaigns) engaged in conduct detrimental to the Program and in violation of law.[171]

*Third*, the CFB's independent investigation also includes the efforts of a third-party investigating firm, DeLuca Advisory Services, "to conduct witness interviews with individuals who may have acted as straw donors and provide recommendations regarding the [CFB's] staff's independent investigation and its conclusions."[172] The CFB also adequately explained how this investigation provided additional bases for the Reason to Believe Determination.[173]

---

[169] (Bahi Plea Tr. 21:20-22:6; CFB's 56.1 ¶ 93.)

[170] (*See, e.g.*, Bahi Plea Tr. 21:20-22:6; *Bahi* Information ¶¶ 1-2; Affidavit in Support of Application for Warrant to Search and Seize (Dkt. 11-6 at ECF pp. 198-199) ¶¶ 12-19; *Bahi* Compl. at ECF p.397; Govt.'s February 7 Letter at ECF p.405; July 25 Resp. at ECF pp.108, 119; *Adams* Indictment at ECF p.333-34.)

[171] (*See, e.g.*, August 28 Notice at 6 (wire fraud), 8-9 (failure to disclose), 10 (election conspiracy).)

[172] (First Ryan Decl. ¶ 98; CFB's 56.1 ¶ 73.)

[173] (*See* August 7 Notice at ECF p.54; August 28 Notice at 5-6.)

The extent of the CFB's independent investigation after the convictions of various fundraisers and agents of the Adams Campaigns brings this case more in line with *Liu* than with *Adams I*. There, then-District Judge Richard Sullivan upheld the CFB's ineligibility determination as to then-candidate for New York City Mayor John Liu because "there was ample basis for the [CFB] to believe" that "the candidate" violated the CFA and CFB Rules where the CFB considered "the prosecution and conviction of [the campaign treasurer] and [the candidate's fundraiser], the evidence introduced at their trial, and the separate investigation conducted by the [CFB] and its investigator, Thacher Associates."[174] *Liu*, 2015 WL 1514904, at *9; *see also Adams I*, at *18 ("[H]ad the CFB engaged in independent fact-finding and investigation after such convictions, as it did in *Liu*, Plaintiffs' as-applied [First Amendment] challenge would have likely failed[,] [b]ecause under those circumstances the rule's application would have been reasonable."). *A fortiori*, there is an even stronger basis for the CFB's "reason to believe" in this case where the CFB considered the prosecution and conviction of various campaign agents and fundraisers, the evidence introduced at their guilty plea allocutions, *and* the separate investigation conducted by the CFB and its investigator, DeLuca Services.

---

[174] Plaintiffs' argument that *Liu* is materially distinct from the present case because in *Liu* the subject campaign's *treasurer* was convicted of campaign finance violations is unavailing. (Pls.' Reply at 10, 15-16.) A campaign's "treasurer" is just one among many people whose conduct the CFB considers under the "reason to believe" standard. *See supra* Part III.A.3. Under this standard, participating campaigns are equally liable for the actions of their treasurers as they are for the actions of their agents. Here, the actions and convictions of the Adams Campaigns' agents have provided the CFB with a "reason to believe" that "the candidate" engaged in conduct detrimental to the Program and in violation of law. *See supra* Part III.A.2.a, B.1.

The CFB is entitled to summary judgment on Plaintiffs' as-applied First Amendment claim because the CFB's independent factfinding was adequate and its limited reliance on the dismissed *Adams* Indictment was proper.

### 2. The CFB's "Reason to Believe" is not "Void for Vagueness" As-applied to the 2025 Campaign

Plaintiffs allege that "as applied to the [2025] Campaign," the CFB's "reason to believe" standard is "unconstitutionally vague" because "in the absence of . . . evidence" that "the candidate" violated the law, the CFB's "denial of matching funds to the [2025] Campaign . . . violates the due process clause."[175]

A void for vagueness claim challenging the notice requirement of procedural due process is subject to a two-step inquiry. The government bears the burden to show that the challenged law: (1) "give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"; and (2) "provide[s] explicit standards for those who apply them." *Grayned*, 408 U.S. at 108.

Plaintiffs challenge the notice requirement.[176] They argue that the 2025 Campaign "could not have been on notice" that the dismissed *Adams* Indictment and criminal cases against alleged "third parties" "could be the basis for the CFB's complete denial

---

[175] (Compl. ¶¶ 64-65.)

[176] (*See* Pls.' Reply at 14.) The court has already determined that the CFB's "reason to believe" standard "survives the challenge with respect to the second, enforcement standards, prong of the [void for vagueness] test." *See Adams I*, at \*23 (explaining that the CFB's "reason to believe" standard as applied to the Adams Campaign "'provided sufficiently clear standards to eliminate the risk of arbitrary enforcement,' because preventing corruption, which is the targeted conduct at issue here, 'falls within the core' of the rule's prohibition") (quoting *Cunney v. Bd. of Trs. of Vill. of Grand View*, 660 F.3d 612, 621-22 (2d Cir. 2011)).

of matching campaign funds."[177] Plaintiffs' argument is unavailing.

The purpose of the notice prong is to ensure that individuals can "steer between lawful and unlawful conduct." *See id.* at 108. The relevant inquiry is "whether the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y.*, 660 F.3d 612, 621 (2d Cir. 2011); *accord Grayned*, 408 U.S. at 108 ("[W]e insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"). Therefore, the relevant question is not whether Plaintiffs had notice as to what *materials* the CFB might use to reach an eligibility determination but whether Mayor Adams, his agents, and agents of the Adams Campaigns were on notice that their *own conduct* could be found to be a basis for ineligibility.

Here, the proscribed conduct is the act of engaging in "conduct detrimental to the Program that is in violation of any other applicable law." *See* CFB Rule 3-01(d)(ii)(B). Plaintiffs had adequate notice that soliciting, accepting, and concealing straw donations, as well as donations from foreign nationals and corporations doing business in New York State—including the filing of false COIB disclosures—would give the CFB "reason to believe" that "the candidate" engaged in conduct detrimental to the Program and in violation of law. *See Adams I*, at *15 ("Clearly, corruption, or even the appearance of it, would be 'detrimental to the Program.'").

Even if Plaintiffs' framing of the notice requirement were correct, a person of ordinary intelligence would reasonably expect the

---

[177] (Pls.' Mot. at 24 (adding that "applying the constitutional vagueness test, no person of ordinary intelligence could even speculate that criminal cases against campaign supporters could affect the campaign's eligibility for public finding").)

CFB to rely on facts about Mayor Adams, his agents, and agents of the Adams Campaigns ascertained from criminal cases involving the Adams Campaigns and its agents. *See Liu*, 2015 WL 1514904, at *3. The CFB Rules are clear that the conduct of Mayor Adams' agents and the agents of the Adams Campaigns may impact eligibility for Program matching funds. *See* CFB Rule 3-01(d)(ii)(B); *see also* CFB Rule 1-02 (defining "the candidate"). The CFB did not rely on the criminal proceedings of independent, third-party "supporters" of Mayor Adams as Plaintiffs claim. Rather, the CFB relied on the criminal convictions of authorized campaign fundraisers who admitted to their participation in straw donor schemes involving the Adams Campaigns, which the CFB found to be detrimental to the Program.[178] *See supra* Part III.A.2.a.

### C. Declaratory Judgment

Plaintiffs' claim for declaratory judgment is dismissed because the court declines to exercise its discretionary jurisdiction under the Declaratory Judgment Act.

The Second Circuit has said that a district court should consider six factors in deciding whether to exercise jurisdiction under the Declaratory Judgment Act. *Admiral Ins. Co.*, 57 F.4th at 99. Those factors are: (1) "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether such a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy"; and (6) "whether concerns for judicial efficiency and judicial economy

---

[178] (CFB's 56.1 ¶¶ 93-94.)

favor declining to exercise jurisdiction." *Id.* at 99-100; *accord Liberty Ins. Corp. v. Hudson Excess Ins. Co.*, 147 F.4th 249, 262 (2d Cir. 2025) (upholding these factors).

Under the *Admiral Ins. Co.* framework "'courts will dismiss a declaratory judgment claim if it is the mirror image of a claim asserted in the complaint' . . . because 'the fact that a lawsuit has been filed that will necessarily settle the issues for which the declaratory judgment is sought suggests that the declaratory judgment will serve no useful purpose.'" *Peleus Ins. Co. v. Hallet, LLC,* No. 24-CV-4630 (HG) (PK), 2025 WL 1736868, at *3 (E.D.N.Y. June 23, 2025) (quoting *Josie Maran Cosms., LLC v. Shefa Grp. LLC,* 624 F. Supp. 3d 281, 286 (E.D.N.Y. 2022)). In other words, a declaratory judgment claim may be dismissed as "duplicative" when it seeks no relief that is not implicitly sought in other causes of action. *See J&A Concrete Corp. v. Dobco Inc.,* No. 21-CV-11097 (JGK), 2025 WL 605252, at *15 (S.D.N.Y. Feb. 24, 2025).

Because the court has already decided the primary claims resolving the controversy between the parties, it declines to exercise its discretionary jurisdiction over Plaintiffs' declaratory judgment claim. *See Scottsdale Ins. Co. v. McGrath,* No. 19-CV-7477 (LJL), 2025 WL 2509190, at *20 (S.D.N.Y. Sept. 2, 2025).

\* \* \*

## IV.    CONCLUSION

Because the undisputed facts show that the CFB's ineligibility determination is rational and that the CFB has met its burden to prove the constitutionality of its actions, the court DENIES Plaintiffs' motion for summary judgment and GRANTS the CFB's motion for summary judgment on all claims. The court further

DISMISSES Plaintiffs' claim for declaratory judgment and DISMISSES Plaintiffs' requests for money damages, attorneys' fees, and litigation expenses.


SO ORDERED.


Dated:    Brooklyn, New York
          October 1, 2025

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge